LUIS A. NIEVES, JR., PLAINTIFF-APPELLANT-RESPONDENT, v. BRUNO SHERMAN CORPORATION (FORMERLY KNOWN AS BRUNO SHERIDAN CORP.), DEFENDANT-RESPONDENT, AND HARRIS CORPORATION (FORMERLY KNOWN AS HARRIS-INTERTYPE CORP.), DEFENDANT-APPELLANT, AND T.W. & C.B. SHERIDAN COMPANY AND JOHN DOE OR JOHN DOE, INC., THE SAID NAME BEING FICTITIOUS, THE TRUE IDENTITY OF THE DEFENDANT BEING UNKNOWN, AND EMPIRE MUTUAL INSURANCE COMPANY, DEFENDANTS.

Argued November 3, 1980—Decided June 18, 1981.

362

*Alan M. Darnell* argued the cause for appellant Harris Corporation (*Wilentz, Goldman & Spitzer,* attorneys).

*George J. Duffy* argued the cause for appellant Nieves (*Baker, Garber, Duffy & Baker,* attorneys).

*Herbert Ziff* argued the cause for respondent (*Ziff & Ziff,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

This case implicates an extension of *Ramirez v. Amsted Industries, Inc.,* 86 *N.J.* 332 (1981), decided this day. We there held that where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor. In *Ramirez* the successor corporation was the only viable corporate entity plaintiff could sue for his injuries; his remedies against the original manufacturer and an intermediate corporation had been destroyed by the successor's acquisition of all the business assets of its predecessors, which subsequently dissolved. The question now before us is whether the *Ramirez* standard may be extended to impose liability on an intermediate successor corporation— one that acquired all the business assets from the original manufacturer and thereafter transferred those assets to *its* successor and discontinued the offending product line, all several years before plaintiff's accident occurred.

The intermediate successor corporation in this case is Harris Corporation (Harris). It is still in business, although no longer manufacturing the type of machinery that caused plaintiff's injuries. Harris's successor, defendant Bruno-Sherman Corporation (Bruno-Sherman), is likewise a viable corporation. It manufactures the product line of the original manufacturer of the machine in question. Harris argues that under these circumstances it should not be subject to liability inasmuch as its intermediate acquisition has not resulted in any interference with plaintiff's remedies against the still-extant manufacturing corporation, Bruno-Sherman. The argument, in short, is that as long as its successor is still susceptible to suit, Harris is entitled to judgment as a matter of law.

We hold that the *Ramirez* rationale is not necessarily so limited as to visit liability upon only the current, viable manufacturer of the product line. In certain situations both the current successor corporation and the intermediate manufacturer may be responsible under *Ramirez*.

I

On July 26, 1976 plaintiff, Luis A. Nieves, Jr., suffered severe injury when his right arm was crushed in die-cutting power press machine at his place of work, Fiber-Flex Company in Jersey City, New Jersey. The arm was subsequently amputated. The machine that caused plaintiff's injury was known as a Sheridan Model 34, Number 93 power press, manufactured in 1941 by T.W. & C.B. Sheridan Company (Old Sheridan), a New York manufacturing corporation established in 1903. The press apparently came into the possession of plaintiff's employer by second-hand purchase in or about 1966. Plaintiff alleges that the press was defective when sold to the original purchaser in 1941.

By agreement dated April 13, 1964, Old Sheridan sold its entire manufacturing business, good will, trade name and substantially all other assets to Harris-Intertype Corporation. The latter in turn formed a new, wholly-owned subsidiary, T.W. & C.B. Sheridan Company (New Sheridan), to receive those assets and continue the manufacturing operation of Old Sheridan. In May 1964 representatives of Harris-Intertype and Old Sheridan executed a separate agreement whereby New Sheridan assumed certain debts, obligations and liabilities necessary for the uninterrupted continuation of the normal business operations of Old Sheridan. The agreement stated that New Sheridan

> hereby assumes and agrees to pay, perform and discharge all debts, obligations, contracts, and liabilities of [Old Sheridan] of any kind, character or description, whether accrued, absolute, contingent or otherwise, as reflected on the balance sheets, books of account and other records of [Old Sheridan] on the date hereof * * *. [Emphasis added.]

Shortly thereafter Old Sheridan, which had changed its name almost immediately following the purchase of the manufacturing assets by Harris, distributed the cash proceeds of the sale to its shareholders and underwent dissolution. Its corporate officers became officers of New Sheridan, which remained a wholly-owned subsidiary of Harris-Intertype until July 1968, when it merged with Harris and became the Sheridan Division of Harris-Intertype.

Pursuant to an agreement dated September 6, 1972 Harris-Intertype sold to Bruno-Sherman all the assets used in the manufacture of the Sheridan die-cutting press and related spare parts. As determined by the trial court, the sale of business assets to Bruno-Sherman included the good will related to the Sheridan press line as well as historical data, business records, customer correspondence, trade secrets, patents, trademarks, designs, patterns, jigs, fixtures and equipment involved in the manufacturing operation. Bruno-Sherman removed the purchased assets to its own plant, where it manufactured and from which it distributed and serviced the Sheridan line of presses. In May 1974 Harris-Intertype Corporation changed its name to Harris Corporation and continued the manufacturing operation of a different product line.

## II

Plaintiff seeks recovery from both Harris and Bruno-Sherman as successor corporations to Old Sheridan, the original manufacturer of the machine that caused plaintiff's injury, on theories of strict products liability, negligent failure to upgrade the machine, and breach of a duty to warn plaintiff's employer of the negligent design of the machine. In separate motions for summary judgment heard and decided by two different trial judges both Harris and Bruno-Sherman argued that they were not successor corporations to Old Sheridan and therefore not liable for injuries caused by defects in products manufactured and distributed by Old Sheridan.

With regard to Bruno-Sherman the trial court, applying the traditional *McKee* approach eschewed today in *Ramirez*, determined that liability could not be imposed upon Bruno-Sherman under any of the four exceptions to *McKee's* general rule of nonliability. Alluding to the mere continuation exception the court concluded that Bruno-Sherman was a business entity separate and distinct from Old Sheridan and as such was not liable for the product liability claims arising out of defects in Old Sheridan's products. It also concluded that as a matter of law, Bruno-Sherman had no duty to upgrade the Old Sheridan press nor to notify plaintiff's employer of new or improved safeguards for the press.

Shortly thereafter another trial court denied Harris' motion for summary judgment. Writing with the benefit of the then recently-filed Appellate Division opinion in *Ramirez v. Amsted Industries, Inc.*, 171 *N.J.Super.* 261 (1979), the court noted the recognition in *Ramirez* of a "recent trend towards a rule imposing liability on the successor corporation without regard to the niceties of corporate transfers where the successor has acquired and has continued the predecessor's commercial activity in an essentially unchanged manner" (quoting 171 *N.J.Super.* at 269–70). The trial judge based his denial of summary judgment to Harris primarily upon three Michigan cases that analyzed the Old Sheridan-to-Harris-to-Bruno-Sherman corporate genealogy in a similar context. See *Trimper v. Harris Corp.*, 441 *F.Supp.* 346 (E.D.Mich.1977); *Trimper v. Bruno-Sherman Corp.*, 436 *F.Supp.* 349 (E.D.Mich.1977); *Turner v. Bituminous Cas. Co.*, 397 *Mich.* 406, 244 *N.W.2d* 873 (1976). Applying the continuation approach developed in *Turner* and applied in the companion cases of *Trimper*, the trial court relied on *Trimper's* conclusion that the corporate transactions involving Old Sheridan and Harris demonstrated a continuity of the die press manufacturing enterprise that would preclude granting summary judgment to Harris.

Pursuant to *R.* 2:2–4 both Harris and the plaintiff moved for and were granted leave to appeal to the Appellate Division from

the denial of summary judgment to Harris and the grant of summary judgment to Bruno-Sherman. We ordered direct certification of the Harris and Nieves appeals pending unheard in the Appellate Division, 84 *N.J.* 415 (1980), in order that we might consider this case together with *Ramirez, supra.*

### III

█ We reverse the trial court's grant of summary judgment to Bruno-Sherman, substantially on the basis of *Ramirez.* Bruno-Sherman is in much the same position for purposes of the *Ramirez* analysis as was Amsted in the companion case. In 1972 it purchased substantially all the business assets related to the manufacture of Sheridan die-cutting presses, and continued operation of essentially the same press manufacturing enterprise. The 1972 purchase agreement with Harris expressly provided that Bruno-Sherman desired to purchase the business assets of a going manufacturing enterprise, "including the good will related thereto." The agreement provided for the training by Harris of Bruno-Sherman's employees and the supplying of technical assistance as needed by Bruno-Sherman. Further, Harris agreed to forward to Bruno-Sherman all inquiries relating to the business for five years, and covenanted not to compete with Bruno-Sherman for ten years. For a period of five years following the closing of the sale Bruno-Sherman was authorized to use the Sheridan trade name by affixing the following legend to the presses it manufactured: "SHERIDAN Die Cutting Press manufactured by BRUNO SHERMAN CORPORATION."

It is obvious that Bruno-Sherman benefited from its use of the trade name and good will of Sheridan in manufacturing the same line of products and from holding itself out to customers and the public as substantially the same manufacturing enterprise. We find the following passage from *Trimper v. Bruno-Sherman Corp., supra,* where the court applied the *Turner* continuity approach in denying Bruno-Sherman's motion for

summary judgment in a similar factual setting, to be equally appropriate for the purposes of the *Ramirez* analysis:

> Where the successor corporation represents itself either affirmatively or, by omitting to do otherwise, as in effect a continuation of the original manufacturing enterprise, a strong indication of continuity is established. *Justice would be offended if a corporation which holds itself out as a particular company for the purpose of sales, would not be estopped from denying that it is that company for the purpose of determining products liability.* This was recognized in another context in the Restatement Torts, 2d, § 400, which decrees that "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacture." [436 *F.Supp.* at 351 (emphasis in original).]

The imposition on Bruno-Sherman of potential liability for injuries caused by defects in the Sheridan product line is justified as a fair and equitable burden necessarily attached to the substantial benefit that it enjoyed in the "deliberate albeit legitimate exploitation of [Old Sheridan's] established reputation as a going concern manufacturing a specific product line." *Ray v. Alad Corp.*, 19 *Cal.*3d 22, 34, 560 *P.*2d 3, 11, 136 *Cal.Rptr.* 574, 581 (1977).

Imposition of potential liability on Bruno-Sherman is further justified by its ability to gauge the risks of injury from defects in the Sheridan product line and to bear the accident-avoidance costs. See *Ramirez, supra,* 86 *N.J.* at 354. As stated in *Ramirez,* because the successor corporation acquired the resources that had previously been available to the original manufacturer for meeting its responsibilities to persons injured by defects in its line of products, the successor remains in a better position than the user of the product to bear accident avoidance costs. See 86 *N.J.* at 352. By the terms of the 1972 purchase agreement with Harris-Intertype, Bruno-Sherman acquired all the assets and sources of information relating to the Sheridan product line. Bruno-Sherman thus had virtually the same capacity as Old Sheridan to estimate the risks of claims for injuries from defects in previously manufactured Sheridan presses and to bear the costs of minimizing or avoiding those accidents. See *Ramirez, supra,* 86 *N.J.* at 352; *Ray v. Alad, supra,* 19 *Cal.*3d at 33, 560 *P.*2d at 10, 136 *Cal.Rptr.* at 581.

Contrary to the trial court's determination, Bruno-Sherman is properly exposed to potential products liability as a successor corporation to Old Sheridan.

## IV

Harris argues that once a company has ceased manufacturing the product in question, as it has, and another viable company has acquired the assets related to the manufacturing operation and continues to manufacture the product line, as Bruno-Sherman does, there is no justification for imposing successor corporation liability under *Ramirez* on the intermediate company. It contends that there is missing an essential functional prerequisite to the imposition of that liability, namely, the nonavailability of a viable manufacturer of the product line against which plaintiff may seek recompense. Harris concludes that *Ramirez* should be limited to the current, viable manufacturer of the product line at the time of plaintiff's injury and suit.

In *Ray v. Alad, supra,* the California court's imposition of strict liability upon a corporate successor to the product line of the original manufacturer was justified by three factors:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. [19 *Cal.*3d at 31, 560 *P.*2d at 9, 136 *Cal.Rptr.* at 580.]

Harris' position is essentially that the first justification listed above—the destruction of plaintiff's remedies against the original manufacturer—is concerned solely with finding one viable, extant corporate defendant that has succeeded to the manufacturing operation of the original manufacturer.

In so arguing Harris misinterprets the underlying purpose of this justification for the imposition of successor corporation liability. In *Ray v. Alad, supra,* the court was concerned not as much with the availability of one particular viable successor as

it was with the unavailability of the original manufacturer by reason of its divestiture of assets and dissolution. The reason the *Ray* court focused upon only one corporate successor to the Alad product line is because there *was* only one viable, extant successor corporation—Alad II. The fact that there are two such successors to Old Sheridan in the present case does not alter the reality that Harris' acquisition of the business assets and manufacturing operation of Old Sheridan contributed to the destruction of the plaintiff's remedies against the original manufacturer. By acquiring the business assets of Old Sheridan and continuing the established operation of manufacturing and selling Sheridan die-cutting products, Harris "became 'an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products.'" *Ray v. Alad, supra,* 19 *Cal.*3d at 34, 560 *P.*2d at 11, 136 *Cal.Rptr.* at 582 (quoting *Vandermark v. Ford Motor Co.,* 61 *Cal.* 3d 256, 262, 391 *P.*2d 168, 171, 37 *Cal.Rptr.* 896, 899 (1964)). Harris's prominent role in the overall enterprise of manufacturing Sheridan die-cutting presses is not to be overlooked merely because plaintiff's injury did not occur while Harris was actually engaged in the manufacturing operation.

That both Harris and Bruno-Sherman had the ability to assume the original manufacturer's risk-spreading and cost-avoidance roles is evidenced by the 1972 purchase agreement between the parties. In paragraph 9 of that agreement, Harris (Seller) agreed to retain liability for contingent product liability claims as follows:

> 9. *Product Claims.* Buyer does not assume any liability or responsibility for defense of pending litigation claims or for any personal injury or physical property damage, whether arising before or after the date hereof, caused by or arising out of any Products delivered by Seller prior to the date hereof except to the extent altered by Buyer, but Buyer agrees to provide Seller, at Seller's expense, reasonable assistance in defense against the prevention of such claims and liabilities resulting therefrom. Seller has maintained insurance to cover any such claims and will continue such insurance until the Closing Date. Thereafter, Buyer agrees to provide for or otherwise purchase similar insurance if in Buyer's sole discretion Buyer deems it necessary to do so.

In paragraph 8(f) of the agreement, however, Bruno-Sherman agreed to indemnify Harris as follows:

(f) Buyer agrees to indemnify Seller against any judgments or awards against Seller arising out of the manufacture, sale or use of Products manufactured by Buyer and to provide Seller, at Buyer's expense, reasonable assistance in the defense of any claims or legal actions against Seller with respect to such Products.

As between the two successor corporations the provisions of this indemnification agreement, if applicable to the particular fact situation presented, should be given their intended effect as a risk-spreading and cost-avoidance measure. While the *Ramirez* rationale is concerned with imposing strict tort liability for damages caused by defects in units of the product line acquired and continued by successor manufacturers, neither *Ramirez* nor the injured plaintiff—if he successfully proves his case against the successors, who stand in the shoes of the original manufacturer—is concerned with how that liability will be allocated or borne as between two successor corporations. See *Trimper v. Harris Corp., supra,* 441 *F.Supp.* at 347.

### V

Finally, as an independent ground of liability, plaintiff asserts that both Harris and Bruno-Sherman, as corporate successors to the original manufacturer, Old Sheridan, had the duty to update the product by notifying the owners of Sheridan presses of changes in the state of the art concerning safety improvements, and to warn the owners of defects in the product as they became known to the successors. See generally, *Travis v. Harris Corp.,* 565 *F.2d* 443, 448–49 (7th Cir.1977); *Shane v. Hobam, Inc.,* 332 *F.Supp.* 526, 530–31 (E.D.Pa.1971); *Chadwick v. Air Reduction Co., Inc.,* 239 *F.Supp.* 247, 250 (N.D.Ohio 1965); *Powers v. Baker-Perkins, Inc.,* 92 *Mich.App.* 645, 662–63, 285 *N.W.2d* 402, 410–11 (Ct.App.1979); *Jackson v. N.J. Mfrs. Ins. Co.,* 166 *N.J.Super.* 448, 464–66 (App.Div.1979); *Wilson v. Fare Well Corp.,* 140 *N.J. Super.* 476, 491–93 (Law Div.1976). The trial courts made no findings of fact bearing on the existence of this additional duty to warn. However, the trial judge in granting Bruno-Sherman's motion determined as a matter of law that there was no such duty because it found that Bruno-Sherman is not a

corporate successor to Old Sheridan. Because we have decided today that both Harris and Bruno-Sherman are indeed successor corporations to the original manufacturer, Old Sheridan, at least for purposes of the imposition of strict products liability for damages caused by defects in units of the acquired and continued line of Sheridan die-cutting presses, our reversal of the summary judgment granted to Bruno-Sherman applies to the trial court's treatment of the duty-to-warn issues as well.

The limited record presently before us consists essentially of the pleadings and the corporate contracts of sale. Because of the parties' well-placed emphasis on the material issues of fact concerning successor corporation liability, scant attention was paid in the summary judgment proceedings to the existence *vel non* of a duty to warn. As stated by the Seventh Circuit in an analogous situation:

> Succession to a predecessor's service contract, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn. [*Travis v. Harris Corp., supra,* 565 *F.*2d at 449.]

In the present record there exist genuine issues of material fact as to the extent of the successors' responsibility to update or service the machine that injured plaintiff, and as to whether Harris or Bruno-Sherman had knowledge of any defects in the design, manufacture or distribution of the machine involved, or even knowledge of the machine's whereabouts.[1] Therefore, because the issue of a duty to warn is not ripe for adjudication on the basis of the present record, we leave that issue to be resolved at trial.

---

[1] The trial court did determine, however, that Bruno-Sherman had supplied certain replacement parts for use in the machine that injured plaintiff, although it went on to state that none of the placement parts actually supplied for Fiber-Flex's machine is alleged to have any connection to plaintiff's accidental injury.

## VI

The order granting summary judgment to defendant Bruno-Sherman Corporation is vacated and the cause remanded for trial.

The order denying summary judgment to defendant Harris Corporation is affirmed.

*For affirmance*—Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*For reversal*—None.