OPINION OF THE COURT
Arthur W. Lonschein, J.
This is an action against the Blaw-Knox Food and Chemical Equipment, Inc., sounding in strict products liability. After conferring with the parties it became clear that there existed a threshold issue of law which had to be decided before the *627 trial could proceed. The parties stipulated to the admission of certain documents upon which the court could base a determination of this legal issue. The parties did not stipulate to any facts, preferring to let the documents speak for themselves.
The issue is whether or not the defendant Blaw-Knox Food and Chemical Equipment, Inc., which did not manufacture the machine involved in this action, can nevertheless be held liable on one or more theories of corporate successor liability for the allegedly defective manner in which the machine was manufactured.
The machine in question is a model 888D industrial coffee granulizer, manufactured at some time prior to 1959 by B. F. Gump, Inc. In 1959, Gump sold essentially all of its assets to Jabez-Burns & Sons, Inc. The sale was made through a subsidiary of Jabez-Burns which had been incorporated specifically for the purposes of the sale. Upon the closing of the sale, the subsidiary of Jabez-Burns adopted the name of B. F. Gump, Inc., and the original B. F. Gump changed its name to Williams & Williams, Inc. The record does not reflect what the nature of Williams & Williams’ operations were, but it does appear that Williams & Williams continued to exist until it dissolved in 1967.
Jabez-Burns took over Gump’s operations as a going concern. It continued to manufacture the granulizer, apparently without modification, in the same plant under the same name. The contract of sale provided that Gump was to use its best efforts to make its personnel available to Jabez-Burns for continued employment. Further, Gump’s president and corporate secretary agreed to be employed by Jabez-Burns. JabezBurns did not agree to accept Gump’s tort liabilities.
Four years later, in 1963, the present defendant, BlawKnox, bought all of Jabez-Burns’ assets and property including the right to use the Gump name. This agreement likewise provided that Jabez-Burns was to use its best efforts to preserve its business organization intact and to keep its officers and employees available to Blaw-Knox for possible employment. Blaw-Knox agreed to employ these people "to the extent deemed practicable.” It further appears that Blaw-Knox continued to make the same machine, again apparently without modification, in the same plant with the same people under the same name. It continues to make the same machine today, albeit now in a different city.
As in the earlier sale, Blaw-Knox did not agree to accept *628 Jabez-Burns’ tort liabilities. The transaction was structured as a sale of assets and property in return for stock, with 75,000 shares of Blaw-Knox stock being distributed to the JabezBurns shareholders. While Jabez-Burns & Sons, Inc. survived the transaction, it did so as an empty shell. It was dissolved soon after the sale.
If the original B. F. Gump were still in existence, even under the name of Williams & Williams, the plaintiff clearly would have a remedy against it on a theory of strict liability in tort. That company, however, no longer exists in any form. Similarly, plaintiff cannot pursue a remedy against JabezBurns since it, and its subsidiary which carried on the Gump name, were both dissolved and went out of business in 1964.
The general rule is that a corporation is not responsible for the torts of those companies whose assets it may acquire, unless one or more of four generally recognized exceptions applies. These exceptions are (1) where the successor expressly or impliedly assumes the predecessor’s tort liabilities, (2) where there is a consolidation or merger between the two, (3) where the successor is a "mere continuation” of the predecessor, or (4) where the transaction is fraudulent. (Schumacher v Richards Shear Co., 59 NY2d 239 [1983].)
While relying in part upon the second and third of these recognized exceptions, plaintiff bases his claim against BlawKnox primarily on two closely related lines of cases which have been developing in the courts of other States. The first of these was set forth in Turner v Bituminous Cas. Co. (397 Mich 406, 244 NW2d 873). In that case, the Supreme Court of Michigan adopted a theory of successor corporate liability which has come to be known as the "continuation of enterprise” theory. The machine at issue had been manufactured by a company which was taken over lock, stock, and barrel by a new company which continued to make the same products in the same plant with the same people under the same name. As the court there observed (p 426, p 882) "[continuity is the purpose, continuity is the watchword, continuity is the fact.” The court relied upon this continuity, in which the successor corporation held itself out as continuing the original enterprise, as the basis for imposing liability. The court noted that it would be unjust to allow the successor to hold itself out in this manner for the purpose of sales, while allowing it to deny continuity in order to defeat products liability claims.
The court adopted three criteria to test for the existence of *629 continuity: whether there was a continuation of the enterprise of the original entity; whether the original entity ceased its ordinary business operations and dissolved promptly after the transaction; and whether the purchasing entity assumed those liabilities and obligations of the seller normally required for an uninterrupted continuation of the sellers’ operation. (Turner v Bituminous Cas. Co., 397 Mich 406, 420, 430, 244 NW2d 873, 879, 883, supra.) These criteria were adapted from cases which set forth a concept of "de facto merger.” (Shannon v Langston Co., 379 F Supp 797; McKee v Harris-Seybold Co., 109 NJ Super 555, 264 A2d 98, affd 118 NJ Super 480, 288 A2d 585.) The court took pains to point out that the form of transaction was of secondary importance, so long as the necessary continuity were found.
The second doctrine was set forth by the Supreme Court of California in Ray v Alad Corp. (19 Cal 3d 22, 560 P2d 3). This doctrine has become known as the "product line” theory. The facts in Ray were quite similar to those in Turner (supra) as well as to those here. The plaintiff in Ray was injured when he fell from a defective ladder manufactured by the original Alad Corporation. That company had sold all of its assets to a new company, which thereupon adopted the Alad name, and the original Alad went out of business.
The California court relied upon the facts that the new Alad Company continued to make the same line of ladders, and that it exploited its purchase of the original Alad’s trade name, good will, and customer lists in order to hold itself out as the same enterprise. While to some extent the rationale adopted by the California court was similar to that adapted by the Michigan court in Turner (supra) the California court considered to a much greater degree the concept of affording a remedy to an injured plaintiff and the ability of a successor corporation to "spread the risk” to insurance companies and to the public at large. Ray v Alad Corp. (19 Cal 3d, at p 31, 560 P2d, at p 9, supra) also set forth three criteria for imposing liability on a successor: "(1) the virtual destruction of the plaintiff’s remedies against the original manufacturer caused by the successor’s acquisition of the business, (2) the successor’s ability to assume the original manufacturer’s risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer’s good will being enjoyed by the successor in the continued operation of the business.”
*630 While there is some degree of overlap between these criteria and those set forth in Turner (supra) the obvious differences between the two formulations underscore the differing philosophical approaches taken by the California and Michigan courts.
These doctrines have been accepted by the courts of several other States, including those of New Jersey and Pennsylvania. The Supreme Court of New Jersey, in Ramirez v Amsted Indus. (86 NJ 332, 431 A2d 811), discussed the two doctrines and adopted the "product line” theory of Ray v Alad Corp. (supra). It stated that it found this theory preferable "to the continuation of enterprise theory” set forth in Turner v Bituminous Cas. Co. (supra), since it believed that the primary focus should be on a continuation of the actual manufacturing operation rather than on the continuation of ownership and management. The court considered the unavailability of a remedy against the original manufacturer, the ability of the successor to spread the risk, and the justice of imposing liability on the successor as a burden necessarily attached to its enjoyment of the original company’s name and trade.
The Superior Court of Pennsylvania, in Dawejko v Jorgensen Steel Co. (290 Pa Super Ct 15, 434 A2d 106), also adopted the "product line” theory of liability. In that court’s opinion, the difference between the two doctrines was essentially a matter of style (290 Pa Super Ct 15, 434 A2d 106, 111). It viewed the "continuation of enterprise” theory as essentially an expansion of the traditional basis for liability which applied when a successor corporation was merely a continuation of the original operation, which resulted from corporate reorganization without any true change in ownership. The Dawejko court preferred to make a clear break with prior law and adopted the "product line” formulation. It noted, however, that it was unwilling to adopt those specific criteria for the applicability for this doctrine as set forth in Ray v Alad (supra), so that its applicability could be decided on a case-by-case basis, as justice might require.
The "product line” theory has also been adopted by Washington (Martin v Abbott Labs., 102 Wn 2d 581, 689 P2d 368). The "continuity of enterprise” theory has been adopted by Alabama (Andrews v Smith’s Sons Co., 369 So 2d 781) and followed in part by Illinois (Hernandez v Johnson Press Corp., 70 Ill App 3d 664, 388 NE2d 778). All has not been smooth sailing for these doctrines, however. The "product line” theory has been rejected by Illinois (Gonzalez v Rock Wool Eng. & *631 Equip. Co., 117 Ill App 3d 435, 453 NE2d 792; Freeman v White Way Sign & Maintenance Co., 82 Ill App 3d 884, 403 NE2d 495), Kansas (Stratton v Garvey Intl, 9 Kan App 2d 254, 676 P2d 1290) and Alabama (Andrews v Smith’s Sons Co., supra). Both doctrines were rejected by Nebraska (Jones v Johnson Mach. & Press Co., 211 Neb 724, 320 NW2d 481) and Florida (Bernard v Kee Mfg. Co., 409 So 2d 1047).
Our own Court of Appeals has twice had the opportunity to consider the adoption of either or both of these theories. Each time, however, it viewed the facts before it as being inappropriate for a proper consideration of either doctrine. In Schumacher v Richards Shear Co. (59 NY2d 239, supra) the plaintiff was injured by a machine manufactured by Richards Shear Company, which had then granted its successor, Logemann Bros. Co., Inc., an exclusive license to manufacture the machine and to use the Richards trade name. Richards Shear, however, continued as a viable entity and in fact was sued by Schumacher. The Court of Appeals, observing that neither the "continuity of enterprise” nor the "product line” theory would apply to the facts before it in any case, declined to adopt either one. Contrary to the position adopted by the defendants, however, the Court of Appeals did not reject either of these doctrines, but impliedly left open the possibility that in a proper case one or both of them might be adopted.
In Grant-Howard Assoc. v General Housewares Corp. (115 Misc 2d 704, affd on opn below 97 AD2d 390, revd 63 NY2d 291), cited extensively by the plaintiff, the Supreme Court, New York County, enthusiastically adopted the "product line” theory of Ray v Alad (supra). Contrary to the view expressed by plaintiff’s counsel, the reversal by the Court of Appeals was not "on other grounds”, but involved a rejection of that plaintiff’s entire approach in attempting to engraft the law of successor corporations onto the law of indemnification. The Court of Appeals thus found it unnecessary to examine the proposed extension of successor liability. The court’s disapproval of the foundation of the argument cannot be read, as plaintiff would have it, as a tacit approval of the rest of the structure.
In Radziul v Hooper, Inc. (125 Misc 2d 362), the Supreme Court, Monroe County, considered that the Court of Appeals in Schumacher (supra) had foreclosed the applicability of the Turner and Ray doctrines. As the court has observed, however, the Court of Appeals did not do so. Further, it appears that the court’s discussion of successor liability in Radziul was *632 mere dictum, since there had already been a prior motion addressed to successor liability which had been denied. The issue actually before the court involved an allegation of a negligent failure to warn by the successor corporation. Finally, in Monroe v Interlock Steel Co. (128 Misc 2d 28), cited by the plaintiff as approving the continuity of enterprise theory, the court actually applied the traditional "mere continuance” exception set forth in Schumacher. That case involved the incorporation of a business which had begun as a sole proprietorship under circumstances wherein the original proprietor retained sole ownership and control.
Analysis of the facts in this case must start with a consideration of the applicability of the exceptions to the general rule of nonliability set forth in Schumacher (supra), for if they apply any extension of existing law would be unnecessary. Plaintiff contends that the first sale, of the original B. F. Gump to Jabez-Burns, was a "de facto merger,” and hence within the second of the recognized exceptions. No appellate authority exists in New York, however, which recognizes the concept of a "de facto merger,” as distinguished from a formal merger, as grounds for successor liability. Further, the doctrines of "de facto merger” and "continuity of enterprise” are very closely linked (see, Turner v Bituminous Cas. Co., 397 Mich 406, 244 NW2d 873, supra), and the Court of Appeals in citing Turner and then stating that it had not adopted its rule, necessarily implied that it had not yet adopted the concept of "de facto merger.” The exception in Schumacher is not for a de facto, or implied merger, but for a true, formal merger. Thus, the first sale cannot be regarded as being within one of the recognized exceptions.
The plaintiff then urges the proposition that the second sale was a "mere continuance.” This is shown not to be so by the plain language of Schumacher (supra) which limited the "mere continuance” exception to corporate reorganizations where only the successor survives and the original corporation is extinguished as a result of the reorganization. (59 NY2d 239, 245, supra.) The second transaction must be viewed as a sale, not a mere reorganization, even though the consideration consisted of stock rather than cash. Moreover, Jabez-Burns & Sons, Inc. did survive the transaction, even though it was dissolved shortly thereafter.
Since the recognized exceptions do not apply, the court is free to consider the emerging theories. With regard to either of them, the differences employed in structuring the two sales *633 herein can and should be disregarded, and the over-all effect considered. Both times, the purchaser took over a going concern and continued it in such a manner that an outside observer would not notice any change. Both times, the purchaser continued to make the same machine, under the same name, in the same place, with the same people.
The logic of the Michigan court in Turner v Bituminous Cas. Co. (supra) is compelling, and preferable to that of Ray v Alad Corp. (19 Cal 3d 22, 560 P2d 3, supra). The Turner approach has the virtue that it bases its imposition of liability upon the successor corporation’s own acts, in holding itself out to be an unbroken continuation of the original enterprise. This approach is grounded in traditional tort principles. In Ramirez v Amsted Indus. (86 NJ 332, 348, n 3, 431 A2d 811, 819, n 3, supra) the New Jersey court objected to the "continuity of enterprise” theory, on the grounds that it would result in inconsistency and ambiguity. It pointed to cases in Illinois and Michigan where the identical transaction was analyzed under that theory, with opposite results (Hernandez v Johnson Press Corp., 70 Ill App 3d 664, 388 NE2d 778, supra; Korzetz v Amsted Indus., 472 F Supp 136). The objection and the illustration seem less than compelling. The inconsistency of results was the result of apparently poor lawyering, as was recognized by the New Jersey court. The criteria set forth in Turner appear reasonably straightforward on their face, and the New Jersey court pointed to no particular ambiguity. Certainly, there is no difficulty in applying them here.
Applying the Turner criteria, liability should clearly be imposed upon Blaw-Knox. (1) In each case, as noted, the enterprise continued virtually unchanged. (2) In each of the sales, the original entity ceased its ordinary business operations. In the first sale, of course, it did not dissolve promptly, but continued on, in some form, for several years. What seems to be of greatest importance, however, is that it was completely out of the coffee granulizer business. A stranger to the corporate history would not see a connection between the original Gump and Williams & Williams, Inc. (3) In each case the buyer assumed sufficient obligations to continue the seller’s business without interruption. As in Turner (397 Mich 406, 426, 244 NW2d 873, 882, supra) "[continuity [was] the purpose, continuity [was] the watchword, continuity [was] the fact.”
This court would prefer not to base its decision on the broad and sweeping principles of social policy which underlie the *634 "product line” theory of Ray v Alad (supra). In contrast to the "continuity of enterprise” theory, the analysis and criteria set forth in Ray look primarily to the availability of a remedy, and implicitly to the location of a "deep pocket” to furnish that remedy. Its criteria seem less clear than those set forth in Turner (the comments in Ramirez, supra, notwithstanding). This is even more clearly so if the approach to the "product line” theory adopted by the Pennsylvania court in Dawejko v Jorgensen Steel Co. (290 Pa Super Ct 15, 434 A2d 106, supra) becomes dominant. There, it will be recalled, the court eschewed all preset criteria in favor of a case-by-case approach.
I do not necessarily reject the "product line” theory. Indeed, it seems clear that on these facts, any of the States which have adopted that theory, would also impose liability upon Blaw-Knox. I limit myself only to saying that I accept the "continuity of enterprise” theory, and it is on that basis that I hold as a matter of law that Blaw-Knox must bear the liability, if any, for the acts of the original B. F. Gump, Inc., in manufacturing and releasing into the stream of commerce an allegedly defective machine.
The complaint also sets forth causes of action sounding in negligence and breach of warranty. Plaintiff concedes that the negligence referred to involved negligent design by the original B. F. Gump and not direct negligence on the part of BlawKnox. No case of which I am aware, and no theory which has been advanced, would impose liability upon a successor corporation on the basis of negligent design or breach of warranty by the predecessor. Therefore, those causes of action are dismissed and the case will be tried solely on the basis of strict products liability.