William J. HOWARD, Plaintiff,

v.

CLIFTON HYDRAULIC PRESS CO. and Clifton Fluid Power Machinery, Inc., Defendants.

CLIFTON FLUID POWER MACHINERY, INC., Third–Party Plaintiff,

v.

J.B. NOTTINGHAM & CO., INC., Third–Party Defendant.

No. CV 91–5063.

United States District Court, E.D. New York.

Sept. 15, 1993.

Gandin, Schotsky & Rappaport, P.C. by Michael G. Glass, Melville, NY, for plaintiff.

White, Fleischner, Fino & Wade by Benjamin A. Fleischner, New York City, for defendants/third-party plaintiff.

Gallagher, Kushel & Associates, Riverhead, NY, for third-party defendant.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

William J. Howard ("Plaintiff") has brought the instant diversity action against Clifton Power Fluid Machinery, Inc. ("Clifton Fluid") based on a workplace injury Plaintiff suffered while operating a hydraulic press that was manufactured by Clifton Hydraulic Press Co. ("Clifton Hydraulic"), a company that is no longer doing business. Plaintiff seeks to hold Clifton Fluid liable in a products liability action for the press manufactured by Clifton Hydraulic. In response, Clifton Fluid contends that it is not related to Clifton Hydraulic and therefore cannot be held liable for its alleged torts. On that basis, Clifton Fluid has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is granted.

### I. BACKGROUND

In February 1991, Plaintiff, a New York domiciliary, was injured while working for third-party defendant J.B. Nottingham & Co., ("Nottingham"), a New York corporation. At the time of his injury, Plaintiff was using a "Model 501" hydraulic press that had been manufactured by Clifton Hydraulic and sold to Nottingham in 1976.

Clifton Hydraulic, which manufactured customized hydraulic presses, was a New Jersey corporation with three principals: Michael Brodsky, Sr. ("Brodsky"), Mary Brodsky (his wife), and Matthew S. Trella. At least two sons of Michael and Mary Brodsky worked for Clifton Hydraulic after they reached adulthood.

Brodsky died in September 1980. Thereafter, the company ceased operations and sold off its assets to pay its debts. However, the corporation remained in existence until 1988, when the State of New Jersey dissolved it for failure to pay corporate taxes.

About two months after Brodsky's death, his widow and four of the Brodsky sons formed a new corporation, Clifton Fluid, which also makes and sells hydraulic presses. The Brodskys are the sole shareholders of the new corporation. Clifton Hydraulic employees who were not members of the Brodsky family were not retained by the new corporation.

Although the presses sold by both Clifton Hydraulic and Clifton Fluid are customized for individual buyers, they are based on a "product line" with specific model numbers. Both corporations advertised and sold "Model 501" presses.

Clifton Fluid operates out of the same factory as Clifton Hydraulic did. It leases the building from Cliffwood Realty, a company owned or controlled by Mary Brodsky.

Clifton Fluid did not acquire the manufacturing equipment of Clifton Hydraulic.[1] Furthermore, in an evidentiary hearing held on September 1, 1993, Michael Brodsky, Jr. testified that Clifton Fluid never used a Clifton Hydraulic customer list, nor did it advertise itself as a successor corporation to Clifton Hydraulic.

Plaintiff has brought a separate action against Clifton Hydraulic. Clifton Hydraulic, having been dissolved in 1988, has not answered plaintiff's summons and complaint in that action. Plaintiff now brings this action against Clifton Fluid, claiming that it is a successor to Clifton Hydraulic under the "mere continuation" theory of successor liability.

## II. *DISCUSSION*

In addressing the issue of successor liability, this Court must first determine whether to follow the law of New York of New Jersey. A federal court in a diversity case must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Under New York choice-of-law rules, the Court must first determine whether there is an actual conflict between the laws of the jurisdictions involved. *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936, 937 (Ct.App.1993). Accordingly, the Court will first examine the issue of successor liability under the law of the two states.

### A. *New York Law on Liability of Successor Corporations*

New York follows the traditional rule of successor liability: A corporation is not liable for the torts of its predecessor unless (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of the two corporations, (3) the second corporation was a mere continuation of the first, or (4) the dealings between the two were entered into fraudulently to escape such obligations. *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195, 198 (Ct.App.1983).

In *Schumacher*, as in this case, the plaintiff sought to impose successor liability under the third exception, "mere continuation." Schumacher was injured at work while operating a shearing machine manufactured by Richards Shear Co. Between the time of the sale of the machine to Schumacher's employer and the time of the accident, Richards Shear Co. sold to a second defendant, Logemann Brothers Co. ("Logemann"), the right to manufacture and sell Richards Shear products and to use the name "Richards." Thereafter, Logemann produced Richards Shears products, and Richards Shear Co. stopped doing so. *Id.* 464 N.Y.S.2d at 439, 451 N.E.2d at 197.

The *Schumacher* court refused to impose successor liability on Logemann, holding that the "mere continuation" exception could apply only where there was a corporate reorganization and only one corporation survives the transaction. *Id.* at 440, 451 N.E.2d at 198. Since Richards Shear had survived purchase by the alleged successor "as a distinct, albeit meager, entity," the third exception could not apply. *Id.*

Applying this rule to the instant case, this Court finds that Clifton Fluid is not a successor corporation to Clifton Hydraulic because Clifton Fluid was not created through a reorganization or sale of Clifton Hydraulic[2] and because Clifton Hydraulic survived the creation of the second corpora-

---

**1.** Clifton Fluid has in its possession some pieces of Clifton Hydraulic's equipment that apparently drew no interest from buyers. However, Clifton Fluid did not purchase these pieces and does not use them in its business.

**2.** Plaintiff points to the few pieces of Clifton Hydraulic equipment that Clifton Fluid apparent-

ly retained by default. It is not certain from the papers before the Court what the monetary value or usefulness of this equipment is. However, Clifton Fluid has never used this equipment. (Suppl.Aff. of Michael Brodsky, Jr. at 2. and testimony of Michael Brodsky, Jr. on September 1, 1993.)

tion for a number of years as a "distinct, albeit meager, entity." *Id.; see also Diaz v. South Bend Lathe, Inc.,* 707 F.Supp. 97, 102–03 (E.D.N.Y.1989) (same); *Parra v. Production Mach. Co.,* 611 F.Supp. 221, 224 (E.D.N.Y.1985) (same).

Plaintiff also argues that New York courts would impose liability based on two other theories. In cases where one business has acquired the assets of another, the first theory, as explained in *Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976), entails a "balancing approach, where there has been a basic 'continuity of the enterprise' of the seller corporation." *Schumacher,* 464 N.Y.S.2d at 440, 451 N.E.2d at 198. The *Schumacher* court declined to adopt the *Turner* theory, however, noting that the facts of *Schumacher* did not "manifest continuity of corporate responsibility, such as continuity of management, key personnel, and physical location...." *Id.*

The second theory is the "product line" exception, first adopted in *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). Like the Turner theory, the product line exception implicates continuity of enterprise. However, the product line exception goes further, specifically setting forth the following policy considerations: "the availability of remedies for the injured plaintiff as well as the fairness of requiring the successor to assume a responsibility for defective products." *Schumacher,* 464 N.Y.S.2d at 440, 451 N.E.2d at 199. In *Schumacher,* the New York Court of Appeals declined to adopt the product line exception, noting that unlike in *Ray,* the putative predecessor corporation in *Schumacher* did not dissolve shortly after the sale of the allegedly defective equipment and that the same personnel did not continue to produce the same equipment under the same corporate name. *Id.* at 440–41, 451 N.E.2d at 198–99.

Plaintiff argues that because the instant case presents continuity of location and product, and some continuity of management, New York would adopt either the *Turner* or the *Ray* approach. One New York court has taken up this invitation. *See Salvati v. Blaw–Knox Food Corporation,* 130 Misc.2d 626, 497 N.Y.S.2d 242, 247 (Sup.Ct.1985) (adopting the *Turner* approach); *but see Radziul v. Hooper,* 125 Misc.2d 362, 479 N.Y.S.2d 324, 326 (Sup.Ct.1984) (rejecting both *Turner* and *Ray* ). In the instant case, only the physical location of the two companies shows continuity; the management, the personnel and the name of the "successor corporation" all show significant change from its "predecessor." Moreover, Clifton Fluid did not acquire the assets of Clifton Hydraulic. Under these facts, this Court finds that New York would not expand its current view of successor liability and Clifton Fluid cannot be held liable for the torts of Clifton Hydraulic. *See Santa Maria v. Owens–Illinois, Inc.,* 808 F.2d 848, 858–60 (1st Cir.1986) (applying New York law); *Wensing v. Paris Indus.—New York,* 158 A.D.2d 164, 558 N.Y.S.2d 692, 694 (3d Dep't 1990).[3]

### B. New Jersey Law on Liability of Successor Corporations

Like New York, New Jersey once followed the traditional rule regarding successor liability. *See McKee v. Harris–Seybold Co.,* 109 N.J.Super. 555, 264 A.2d 98 (1970), *aff'd* 118 N.J.Super. 480, 288 A.2d 585 (App.Div. 1972). However, in *Ramirez v. Amsted Industries,* 86 N.J. 332, 431 A.2d 811 (1981), the New Jersey Supreme Court adopted California's product line exception to successor liability.

*Ramirez* makes a sweeping change, abandoning the traditional rule as placing "unwarranted emphasis on the form rather than the practical effect of a particular corporate

---

**3.** Plaintiff also argues that liability should be imposed on Clifton Fluid based on a "duty to warn" theory. Under that theory, a successor corporation's liability arises out of a continuing relationship between the corporation and the owner of the allegedly defective product as well as the corporation's knowledge of the location of the machine and of the alleged defect. *Schumacher,* 464 N.Y.S.2d at 441, 451 N.E.2d at 199.

Clifton Fluid did have knowledge of the location of the machine and of the alleged defect. However, there is no evidence of continuing contact between Clifton Fluid and Nottingham, such as a service contract, that would be of "actual or potential economic advantage to the defendant successor corporation." *Id.* Therefore, this Court could not impose liability based on a duty to warn. *Id.* at 442, 451 N.E.2d at 200.

transaction." *Ramirez,* 431 A.2d at 815. Instead, *Ramirez* emphasizes the need for plaintiffs to recover for their injuries. *Id.* at 816 (the "narrow application of the [traditional] approach to successor liability is indeed inconsistent with the developing principles of strict products liability and unresponsive to the interests of persons injured by defective products in the stream of commerce").

 *Ramirez* holds that courts should look at whether the new corporation continued producing the defective product, as well as three fairness factors discussed in *Ray:* (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's ability to assume the original manufacturer's risk-spreading role; and (3) the fairness of requiring the successor to assume responsibility for defective products as a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. *Ramirez,* 431 A.2d at 819 (citing *Ray,* 19 Cal.3d at 31, 136 Cal.Rptr. 574, 560 P.2d 3).

Subsequently, New Jersey courts interpreting *Ramirez* have imposed liability on successor corporations based on policy factors, even when all the *Ramirez* factors were not present. *See, e.g., Nieves v. Bruno Sherman Corp.,* 86 N.J. 361, 431 A.2d 826 (Sup. Ct. New Jersey 1981) (imposing liability on an intermediate successor corporation); *Pacius v. Thermtroll Corp.,* 259 N.J.Super. 51, 611 A.2d 153, (Super.Ct.1992) (imposing liability on a successor corporation despite the fact that it did not continue manufacturing the allegedly defective product). However, this Court is not aware of any New Jersey case applying successor liability where the alleged successor corporation did not formally acquire the assets of the predecessor corporation and exploit its goodwill. *See Pacius,* 611 A.2d at 157–58.

The facts of the instant case do not call for the application of *Ramirez.* In Plaintiff's favor, Clifton Fluid produces the same product at the same location as Clifton Hydraulic and because Clifton Hydraulic has been dissolved, Plaintiff is without a remedy if there is no successor corporation liability. However-

er, Clifton Fluid has neither acquired Clifton Hydraulic's assets nor taken its good will. Therefore Clifton Fluid should not be required to provide Plaintiff with a remedy for his injuries.

C. *Choice of Law*

Given that the issue of successor liability does not turn out differently under New York or New Jersey law, a true conflict does not exist and this Court need not determine which state's law applies.

III. *CONCLUSION*

For the aforementioned reasons, Clifton Fluid's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted.

SO ORDERED.