*750 OPINION OF THE COURT
Raymond E. Cornelius, J.
The plaintiff, in this action, claims that the decedent, Thomas E Gerhart, suffered personal injury and death as the result of being exposed to asbestos products from the 1940s through the 1980s. The complaint names and identifies a number of defendants who allegedly sold, distributed, and/or otherwise are responsible for such exposure, including Hahn Automotive Warehouse, Inc., and also an entity identified as “Finn’s Auto Parts.” In essence, the claim against these defendants is based upon purchases, by decedent, of replacement brakes for several trucks he used in connection with a drilling business, and, in support thereof, invoices from the 1960s have been produced, containing the name “Finn’s Auto Parts Center.” The defendant, Finn’s Auto Parts, is not a separate legal entity, but rather, the doing business as of an auto parts store previously operated by Finn of Canandaigua, Inc. On May 1, 1997, Hahn entered into an asset purchase agreement with Finn of Canandaigua, Inc., involving Finn’s Auto Parts, and this forms the basis for the claim against Hahn on a theory of successor liability.
Hahn has now made a motion for summary judgment, pursuant to CPLR 3212, to dismiss the complaint, which contains causes of action based upon claims of negligence, failure to warn, breach of warranty, and products liability. This defendant contends that, under existing New York law, liability should not be imposed against them for the previous sale, by Finn’s Auto Parts, of brake products, which allegedly resulted in the decedent’s exposure to asbestos. The facts, for the most part, are not subject to dispute, insofar as relevant to a determination of this motion.
A review of the asset purchase agreement, dated May 1, 1997, discloses that Hahn acquired all of the fixed assets, inventory of automotive parts and supplies, good will, list of customers, “and related files and such records as are reasonably necessary for the continuation of the business” of Finn’s Auto Parts. In addition, the purchaser received permission to use the name “Finn’s Auto Parts,” and the seller agreed to thereafter discontinue use of the name. The conditions of closing included the negotiation of a satisfactory lease for the property, at which Finn’s Auto Parts had been located, entering into an employment agreement with a store employee, and the execution of a covenant not to compete by the sole shareholder of Finn of Canandaigua, Inc. However, under the asset purchase agreement, the purchaser did not assume any liabilities of the seller.
*751 The affidavit of Hahn’s vice-president of finance was submitted in support of the motion for summary judgment. This affidavit establishes that, following the asset purchase, Hahn began to operate Finn’s Auto Parts in the same manner as other stores, which were owned by the corporation, by catering to installers, as opposed to the general public. In addition, Hahn replaced the prior store supervisor, used its own invoices, and, after several years, moved to a new location.
There was no exchange of stock involved in the asset purchase, and the sole shareholder of Finn of Canandaigua, Inc., neither acquired any interest in Hahn nor was he involved in the operation of Finn’s Auto Parts after May 1, 1997. Based upon the covenant not to compete, the court will assume, for purposes of this motion, that the corporate entity, Finn of Canandaigua, Inc., did not conduct any business and was inactive following the sale of Finn’s Auto Parts. However, records of the New York State Department of State reveal that a certificate of dissolution was not filed until October 20, 1998.
As a general rule, a corporation which acquires the assets of another corporation is not liable for the torts of such predecessor, including conduct premised upon strict products liability CSchumacher v Richards Shear Co., 59 NY2d 239 [1983]). In Schumacher, the Court of Appeals reiterated that there are four recognized exceptions:
“A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor’s tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.” (Id. at 245.)
In the pending case, counsel for the plaintiff argues that there is, at least, a question of fact concerning the application of the “mere continuation” exception. However, as discussed in Schumacher, this exception refers only to a corporate reorganization, in which the predecessor corporation is extinguished and only one corporation survives the transaction (also see, Meadows v Amsted Indus., 305 AD2d 1053 [4th Dept 2003]). Thus, the purchaser in Schumacher could not be considered a “mere continuation” of Richards Shear Co., Inc., because the latter survived the purchase agreement in what the Court of Appeals described as a “distinct, albeit meager, entity.” (Schumacher at *752 245.) Similarly, the exception would be inapplicable to a situation where a corporation, which sold a business, survived the transaction for several years while in bankruptcy (Sweatland v Park Corp., 181 AD2d 243 [4th Dept 1992]). In summary, if a “predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable” (Diaz v South Bend Lathe Inc., 707 F Supp 97, 100 [ED NY 1989]). In the pending case, of course, Finn of Canandaigua, Inc., survived as a corporation for over a year and a half following the sale of Finn’s Auto Parts, and, accordingly, the “mere continuation” exception could not be applicable to this case.
Alternatively, plaintiffs counsel urges the court to adopt and apply the “continuity of enterprise” exception, which is one of two additional and recently developing exceptions to the successor liability rule. Actually, both of these exceptions were discussed, at length, in Schumacher. Specifically, the Court of Appeals observed that the other courts, which have addressed the issue of imposing strict liability upon successor corporations, have utilized a “balancing approach, where there has been a basic ‘continuity of the enterprise’ of the seller corporation” (Schumacher at 245, quoting Turner v Bituminous Cas. Co., 397 Mich 406, 430, 244 NW2d 873, 883 [1976]), which is “an expansion of the traditional merger or consolidation exceptions, or where the successor corporation continues to produce the predecessor’s product in the same plant,” described as the “product line” exception (id., citing Ray v Alad Corp., 19 Cal 3d 22, 560 P2d 3 [1977]). However, the Court then stated: “We do not adopt the rule of either case but note that both are factually distinguishable in any event.” (Id.) Earlier in the same decision, the Court stated: “[T]here are no facts alleged which warrant our consideration or application of the ‘product line’ or ‘continuity of enterprise’ theories extending liability to a successor corporation.” (Id. at 243.)
The above-quoted portions of the decision, in Schumacher, have resulted in a debate and some disagreement as to whether or not the Court of Appeals has rejected the two additional exceptions, or simply found the two exceptions inapplicable to the facts in that case. For example, in one New York decision, the court acknowledged that liability had been extended by application of the “continuity of enterprise” and “product line” exceptions in other jurisdictions, but concluded that “our Court of Appeals has refused to adopt either rule,” citing Schumacher, *753 and “[i]n so doing, it would appear to have aligned New York with the majority of other jurisdictions which have considered the question ...” (Radziul v Hooper, Inc., 125 Misc 2d 362, 365 [Sup Ct, Monroe County 1984]). Conversely, in another decision, a court concluded that the Court of Appeals, in Schumacher, had not rejected either the “continuity of enterprise” or “product line” theories, “but impliedly left open the possibility that in a proper case one or both of them might be adopted” (Salvati v Blaw-Knox Food & Chem. Equip., 130 Misc 2d 626, 631 [Sup Ct, Queens County 1985]). It should also be noted that more recently the Appellate Division, Third Department, has adopted the “product line” exception (Hart v Bruno Mach. Corp., 250 AD2d 58 [3d Dept 1998]). Thereafter, the First Department declined to follow this ruling and rejected the “product line” theory of liability (City of New York v Charles Pfizer & Co., 260 AD2d 174 [1st Dept 1999]).
The Michigan Supreme Court, in Turner, considered de facto merger as coming within the traditional exception of merger and consolidation, thereby insulating a successor corporation from liability for products manufactured by a predecessor. The court noted that de facto merger is a concept oftentimes encountered in regard to shareholder voting and appraisal rights, and is dependent upon proof of four factors:
1. Continuity of management, personnel, physical location, assets and general business operations,
2. Continuity of shareholders or ownership,
3. Cessation and dissolution of the predecessor as soon as practically and legally possible, and
4. Assumption by the successor of the liabilities necessary for the uninterrupted continuation of the business of the predecessor.
Under Michigan law, the court viewed continuity of shareholder interest as key to a de facto merger. However, the court further determined that, for purposes of products liability, there was no basis for treating a purchase of corporate assets for cash, which occurred in that case, to be any different from acquisition by an exchange of stock. Accordingly, the court adopted what has now become to be known as the “continuity of enterprise” exception, the existence of which is dependent upon the same factors the court discussed, in regard to de facto merger, with the exception of continuity of shareholder interest.
The court, in Salvati, adopted the “continuity of enterprise” exception because of a belief that Schumacher only recognized *754 formal merger or consolidation as one of the four exceptions, and there was no appellate authority supporting the concept of de facto merger. Subsequently, the appellate court in Sweatland analyzed the four criteria established in Turner, citing Menacho v Adamson United Co. (420 F Supp 128, 133 [1976]), and concluded as follows:
“Public policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger. While factors such as shareholder and management continuity will be evidence that a de facto merger has occurred (see, Ladjevardian v Laidlaw-Coggeshall, Inc., 431 F Supp 834), those factors alone should not be determinative. ‘It is apparent from the nature of the inquiry required that the court is to make, on a case-by-case basis, an analysis of the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution, and successorship’ (Santa Maria v Owens-Illinois, Inc., 808 F2d 848, 861).” (Sweat-land, 181 AD2d at 246.)
There are federal decisions, which also interpret New York law as recognizing de facto merger, within the context of tort liability (see, Santa Maria v Owens-Illinois, Inc., 808 F2d 848 [1st Cir 1986]; Beck v Roper Whitney, Inc., 190 F Supp 2d 524 [WD NY 2001]; Diaz, 707 F Supp 97). It is interesting to note that, in Sweatland, the Court declined to address whether or not the Court of Appeals would adopt the “product line” or “continuity of enterprise” theories of liability.
Assuming that the exception, under Schumacher, pertaining to merger and consolidation would encompass “de facto merger,” and further that there is no one factor, including continuity of ownership, which is determinative on that issue, there is very little, if any, distinction between the exceptions of “continuity of enterprise” and consolidation and merger. In either instance, a court must weigh the various factors on a case-by-case basis to determine if tort liability should be imposed upon a successor corporation. In the pending case, the court has determined, as a matter of law, that the facts are insufficient to justify such result, either on a theory of “de facto merger” or “continuity of enterprise.”
First, the asset purchase agreement did not involve an exchange of stock, and the sole shareholder, Finn of Canandaigua, Inc., did not have a legal interest or management role in *755 Hahn following the closing. As previously discussed, however, the absence of continuity in ownership or stock is not necessarily determinative on the ultimate question. Nevertheless, there are several of the other listed criteria missing from the facts in the pending case. For example, Finn of Canandaigua, Inc., may have ceased doing business, but was not dissolved as soon as legally or otherwise practical. Perhaps more important, Hahn did not assume any liabilities, which were reasonably necessary to enable Finn’s Auto Parts to continue in business.
The final factor to be taken into consideration is what Turner describes as continuity of enterprise, which encompasses continuity of management, personnel, physical location, assets and general business operations. Following the closing, there apparently was retention of at least one store employee. Furthermore, all of the assets and inventory were acquired by Hahn and the store remained, for a time, at least, in the same physical location. Nevertheless, as aforementioned, after a period of time, there was a physical relocation of the store, and a change in the nature of the business operations. The general business operations changed from being primarily a retail store to being more oriented toward wholesale, and similar to other entities operated by Hahn.
In this court’s opinion, the very nature of the business operations, in relationship to the product fabricated or distributed, should constitute another important consideration on the issue of continuity. Most of the cases, hereinbefore cited, involve the question of liability for the previous manufacture and/or sale of a defective product, which was continued to be manufactured or promoted by the successor corporation. Finn’s Auto Parts was simply a retail store, presumably selling many different automobile parts to the general public, including replacement brakes. The brakes, which are subject of the pending lawsuit, were purchased by the decedent for several trucks, which he used in his drilling business over 35 years ago.
In regard to the “product line” exception, the California Supreme Court in Ray set forth certain criteria for imposing liability on a successor. These included consideration of such questions as whether or not the plaintiff had available remedies against the original manufacturer, the successor’s ability to assume the original manufacturer’s risks, and the fairness of requiring the successor to assume responsibility. The same criteria have not been adopted as part of the “continuity of enterprise” exception, but a review of the Michigan Supreme *756 Court’s decision in Turner discloses that the court was concerned about the availability of remedies and discussed the concepts, underlying the Ray decision, at some length. In the case of a distributor, however, which is acquired by a successor corporation, a party injured by a previously sold product would continue to have a remedy against the original manufacturer, or, depending on the facts, such corporation’s successors.
Based upon the foregoing reasons, it is hereby ordered that the motion for summary judgment, pursuant to CPLR 3212, is granted and the complaint is hereby dismissed against Hahn Automotive Warehouse, Inc.