259 N.J. Super. 51 (1992)
611 A.2d 153
JILUS PACIUS, PLAINTIFF,
v.
THERMTROLL CORPORATION, PACKAGING INDUSTRIES GROUP, SENTINEL DIVISION, SENCORP SYSTEMS AND MAGNAFORM, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided May 6, 1992.
*52 Judith De Rosa, (Conti, Kuhrt & Femia, attorneys), for plaintiff.
Mark Herforth, (Fishman & Callahan, attorneys), for defendants.
MENZA, J.S.C.
The defendant, Packaging Industries Group, Sentinel Division, and the defendant Sencorp Systems, Inc., each move for summary judgment.
The question presented is whether a successor company is liable for injuries caused by a defective product manufactured by a predecessor company where it acquired the assets of the other company but did not contribute to the destruction of the selling company nor continue to manufacture its product line.
This is a novel question which has not been decided by the courts of New Jersey.
Plaintiff was injured during the course of his employment while operating a machine known as a Model 360 thermal automatic forming machine which had been designed and manufactured by the defendant, Thermtroll Corp. (Thermtroll).
In 1974, the defendant, Packaging Industries Group, (Packaging), a company which also manufactured a thermal automatic forming machine, purchased from Thermtroll selected assets relating to the Thermtroll line for $25,000.00 in cash. The sale included all rights to develop and manufacture the Thermtroll line and included blue prints, drawings, trade secrets, customer *53 lists, logo and inventory. The transaction did not involve an exchange of stock nor an assumption of Thermtroll's liability by Packaging. Although Packaging and Thermtroll both manufactured a thermoforming machine, Packaging contends that the two corporations were not competitors because they concentrated their sales in separate markets, i.e., Thermtroll produced "low-end" machines and Packaging "high-end."
Packaging did not continue to manufacture the machine and did not service the machines which had been manufactured by Thermtroll. It did not utilize Thermtroll's customer lists nor communicate with its customers, and it allowed the Thermtroll patents to lapse approximately two years after the acquisition. But Packaging did utilize the Thermtroll blueprints to assist in the design of its own machinery and it used the name Sentinel Thermtroll for a period of two years in marketing its own product.
In 1989, the defendant, Sencorp Systems (Sencorp) acquired the Sentinel Division of the defendant Packaging, which included the Thermtroll line previously purchased by Packaging. Sencorp did not resume the manufacture of the Thermtroll line, but agreed to defend product liability actions brought against Packaging.
The defendant Thermtroll is no longer a viable corporation.
The defendant Packaging contends that it has no liability either under traditional rules of successor liability or under the successor liability concept espoused in Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 431 A.2d 811 (1981).
The defendant is correct in asserting that there is no liability under traditional rules of successor liability. Packaging did not agree to assume Thermtroll's liability; the transaction did not amount to a consolidation or merger; Packaging was not a continuation of the Thermtroll Corporation; and the transaction was not entered into fraudulently. See McKee v. Harris Seybold Co., 109 N.J. Super. 555, 264 A.2d 98 (Law Div. 1970), aff'd 118 N.J. Super. 480, 288 A.2d 585 (App.Div. 1972).
*54 Therefore, defendant's liability, if any must be determined under the concept laid out in Ramirez, the product line exception for the imposition of successor liability.
In Ramirez v. Amsted Industries, Inc., supra, the Supreme Court held:
... where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor. (86 N.J. at 358 [431 A.2d 811]) (emphasis supplied).
The Court premised its holding on the California case of Ray v. Alad Corp. 19 Cal.3d 22, 560 P.2d 3, 136 Cal. Rptr. 574 (1977). In that case the California Supreme Court held:
We ... conclude that a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired. (560 P.2d at 11) (emphasis supplied).
The Ray court offered these three justifications for the imposition of liability upon the successor corporation:
... (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. (560 P.2d at 9).
The facts of this case differ from those in Ramirez in that Packaging did not continue to manufacture the product line of its predecessor. It also fails to meet the first justification in Ray, because Packaging's acquisition of Thermtroll did not cause or contribute to the destruction of that company.
The question then, is whether Packaging, as a successor corporation, is liable to the plaintiff for his injuries caused by the defective machine manufactured by Thermtroll, in light of the fact that this case does not meet the criteria set forth in Ray nor the holding of Ramirez.
*55 The answer to this question depends on a determination of whether the Ramirez holding that there must be continuation of the predecessor's product line, and the Ray justification, that the acquisition must contribute to or cause the destruction of plaintiff's remedy, are each a sine qua non for the imposition of successor liability.
Nieves v. Bruno Sherman Corp. 86 N.J. 361, 431 A.2d 826 (1981), was the companion case to Ramirez. In that case, the assets of a company (Old Sheridan) which manufactured the machine that caused the plaintiff's injuries were sold to another company (Harris). Harris continued the manufacture of the product line of Old Sheridan for a period of time before it sold it to yet another company (Bruno Sherman), which thereafter continued to manufacture the product. Old Sheridan went out of business after it sold its manufacturing business to Harris. The Supreme Court held that both Harris  the intermediate company and Bruno Sherman, the current company, were liable to the plaintiff. The Court said:
The imposition on Bruno Sherman of potential liability for injuries caused by defects in the Sheridan product line is justified as a fair and equitable burden necessarily attached to the substantial benefit that it enjoyed in the "deliberate, albeit legitimate exploitation of [Old Sheridan's] established reputation as a going concern manufacturing a specific product line." (at 369 [431 A.2d 826], quoting Ray v. Alad, supra, 19 Cal.3d at 34, 560 P.2d at 11, 136 Cal. Rptr. at 581).
And because:
Imposition of potential liability on Bruno-Sheridan is further justified by its ability to gauge the risks of injury from defects in the Sheridan product line and to bear the accident-avoidance costs. (citation omitted) As stated in Ramirez, because the successor corporation acquired the resources that had previously been available to the original manufacturer for meeting its responsibilities to persons injured by defects in its line of products, the successor remains in a better position than the user of the product to bear accident avoidance costs... Bruno-Sherman ... had virtually the same capacity as Old Sheridan to estimate the risks of claims for injuries from defects in previously manufactured Sheridan presses and to bear the costs of minimizing or avoiding those accidents. (at 369 [431 A.2d 826]).
With regard to the imposition of liability upon Harris, the intermediate company, the Court said:

*56 By acquiring the business assets of Old Sheridan and continuing the established operation of manufacturing and selling Sheridan die-cutting products, Harris "became an `integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products'," (at 371 [431 A.2d 826], quoting Ray, supra, 19 Cal.3d at 34, 560 P.2d at 11, 136 Cal. Rptr. at 582).
Packaging insists that because it did not contribute to the destruction of Thermtroll, it is not liable. In other words, it argues that the first criterion of Ray is an essential element for the imposition of liability upon a successor corporation. This is an incorrect interpretation of the rationale of Ramirez and Nieves. Although both of those cases considered the Ray factors as a basis for the imposition of liability, the Supreme Court did not incorporate them into its holdings, nor indicate that they were necessary elements for the imposition of liability. The emphasis in Ray and Nieves was that the company which manufactured the product was not viable. It was the fact of nonviability of the predecessor company which governed the imposition of liability, not the reason for it.
One commentator has noted the possible consequences of interpreting Ray as an absolute requirement that the predecessor corporation be destroyed by the successor:
Narrow construction of this policy justification as a condition precedent would encourage corporations to limit their liability by requiring sellers to retain their corporate existence after the acquisition. Thus, plaintiffs would be forced to look to the seller, who has minimal assets which might be insufficient to satisfy products liability claims. Therefore, dissolution of the predecessor manufacturer should be irrelevant in determining successor corporation liability. The goal of products liability, namely, to burden the successor corporation which benefits from the product line and is better equipped to spread the costs of injury throughout society, is best served by holding the current manufacturer responsible regardless of the viability of its predecessor. (12 Seton Hall 327, 344-345 (1982)).
This court concludes that the first criterion of Ray is met where the predecessor company is no longer viable. It is the fact of nonviability that supports the imposition of liability. Any discussion with regard to the reasons for the demise of the predecessor is irrelevant. The first criterion of Ray cannot, *57 therefore, be considered an essential element for the imposition of liability.
The defendant's other argument that the successor corporation must continue to manufacture the product line of its predecessor in order for it to be liable, similarly misses the point of what Ramirez and Nieves are all about.
As noted, both cases, particularly Nieves, make it clear that successor corporations are liable, where the company which had manufactured the product is no longer viable, and therefore cannot afford a remedy to a plaintiff. The Court holdings were public policy determinations to afford a remedy to an injured person who would otherwise be remediless. The cases also make it clear that the justification for the imposition of liability is the benefit the successor company receives when it acquires the assets of the predecessor. It is the acquisition of the assets which is determinative of liability not the fact that the product line is continued by the successor. Since the purchasing company benefits from the acquisition of the assets of the predecessor, it should properly be saddled with its burdens. Any other conclusion would make little sense. For example, a successor company could utilize its predecessor's logo, customer lists, good will, designs, production, machinery, etc., and yet be able to escape liability because it had not continued to manufacture the product of the predecessor. A successor company could also escape liability if it decided to use the assets for the production of another product, let's say, an ice making machine, rather than for a lawn mower, the product manufactured by its predecessor. And it could even escape liability if the purpose of the acquisition was the elimination the selling corporation. Would the public policy to afford a remedy to an injured person be thereby effectuated by denying liability in these situations? The rationale of Ramirez and Nieves unquestionably dictates liability in these scenarios and the reason is simply because the only other alternative is to deny an injured person a remedy.
*58 A California appellate court recognized and gave form to this public policy when it imposed liability on a successor corporation which had purchased the assets and trade name of its predecessor but had not manufactured its product line. In the case of Rawlings v. D.M. Oliver Inc., 97 Cal. App.3d 890, 159 Cal. Rptr. 119 (1979), the court said:
In our view Alad should not be construed so narrowly as to create an exclusive exception to the general rule for successor liability permitting a similar result only in an Alad clone. It is essential to focus on the policy considerations underlying strict products liability rather than merely counting the factors mentioned in Alad and giving each equal weight.
........
Fundamental fairness has been sought through a balancing of the rights of the injured party against the rights of those engaged in business, including the latter's reasonable commercial expectations. Placing the economic burden of injuries on those best able to pay for those costs while permitting the transfer of that burden to those most culpable is consistent with the equitable considerations inherent in the resolution of the difficult problems which have been judicially posed. (citations omitted). The thrust from our high court as a matter of first priority has been to maximize recovery for the victim. (citations omitted). The broader interpretation we give to Alad is in line with these principles. (159 Cal. Rptr. at 124).
A law review article which analyzed Nieves and Rawlings concluded that successor liability does not depend on the continuation of the product line.
The decision in Rawlings is analytically supportable. Since the New Jersey Supreme Court's decision in Nieves did not examine whether, in fact, the successor had substantially exploited the predecessor's good will in the injury-causing product line, the distinction drawn between a case where the successor continues production of the item for only a limited time period and a case where it never assumes such production is apparently based on the rationale that only by continuing the actual injury-causing product line will the successor acquire the necessary information to make cost-avoidance and risk-spreading decisions. Where, however, the successor has acquired essentially all of the assets of the predecessor and continues a similar manufacturing operation, continuation of the injury-causing product line may not be needed to acquire this information. Moreover, where the successor acquires an ongoing manufacturing operation it derives significant benefits despite the discontinuation or modification of a line of products. Therefore, whether a successor is deemed to be part of the enterprise which has benefited from the sale of a product should not necessarily depend on whether it has manufactured or distributed identical units of that product line. Once the successor is deemed a part of the enterprise responsible for the injury-causing defective product, its lack of knowledge about the quality *59 of a given product line should not excuse it from liability since culpability is irrelevant to strict liability analysis. (35 Rutgers L.Rev. 418-419 (1983)).
Although Packaging did not continue the product line, it did continue the use of its predecessor's name, thereby exploiting Thermtroll's good will. It also utilized Thermtroll's blueprints. Most importantly, it eliminated a competitor. Surely, these were substantial benefits derived by Packaging which fairly justify the imposition of liability upon it. If we consider that the premise for imposing liability upon a successor corporation is to afford an effective remedy to a plaintiff who may otherwise be left remediless, then one must conclude that any benefit that the successor obtains from the acquisition of the assets of its predecessor should be sufficient to effectuate that proposition.
Packaging received a benefit. It must, therefore, bear the burden.
Motion denied.