**Christopher OLEJAR**

v.

**POWERMATIC DIVISION OF DeVLIEG–BULLARD, INC., et al.**

**No. 92–0150.**

United States District Court, E.D. Pennsylvania.

Nov. 18, 1992.

John Shniper, Phoenixville, PA, for plaintiff.

Thomas P. Wagner and Catherine H. Agnew, Rawle & Henderson, Philadelphia, PA, for defendants.

MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are defendants Powermatic Division of DeVlieg–Bullard, Inc. (correctly styled) ("Powermatic"), Houdaille Industries, Inc. ("Houdaille"), John Crane, Inc. ("John Crane") and T.I. United States Limited's ("T.I.") Motion for Reconsideration of this Court's Order dated September 19, 1992, or for Immediate Certification for Appeal under 28 U.S.C.

§ 1292(b), and plaintiff Christopher Olejar's response thereto. For the following reasons, defendants' Motion for Reconsideration or for Immediate Certification for Appeal is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

On September 16, 1992, this Court denied in part and granted in part defendants' Motion for Summary Judgment.[1] The defendants now ask this Court to reconsider its decision on the strict liability claim. Specifically, this Court must decide whether, under Pennsylvania law, the "product line exception" for corporate liability applies when the plaintiff cannot demonstrate that the actual transfer of assets between the transferor and acquiring corporation destroyed the cause of action against the original manufacturer. Upon reconsideration of the case law, this Court reaffirms its earlier decision that the "causal element" is not a prerequisite to sustaining a cause of action against a previous product manufacturer under Pennsylvania's "product line exception."[2]

## II. DISCUSSION

■ This Court begins its discussion with an acknowledgment that this is a question of state law that has bedeviled federal district courts before, and will continue to do so until the Pennsylvania Supreme Court makes a pronouncement on the "causal element." *See Tracey by Tracey v. Winchester Repeating Arms Co.*, 745 F.Supp. 1099 (E.D.Pa.1990), *aff'd without opinion*, 928 F.2d 397 (3d Cir.1991); *Olejar v. Powermatic, et al.*, Slip Op. No. 92–CV–0150, 1992 WL 236960 (E.D.Pa. Sept. 16, 1992).

As this Court stated in its earlier opinion discussing summary judgment:

when this Court sits in diversity, it must apply the substantive law of the forum in which it is located. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 [58 S.Ct. 817, 822, 82 L.Ed. 1188] (1938). The federal courts are to follow the decision of the Supreme Court of the state where the state's high court has spoken. In addition, "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Commissioner v. Estate of Bosch*, 387 U.S. 429 [456] 465 [87 S.Ct. 1776, 1782, 18 L.Ed.2d 886] (1967).

Slip Op. at 5–6. "Determining what is Pennsylvania's law" becomes the defining question in this Motion to Reconsider, a question that is particularly complicated because there is no Supreme Court holding on point. The absence of the Pennsylvania Supreme Court's view on this subject is further complicated by two additional issues. First, each of the federal courts that have addressed the "corporate successor liability doctrine" since 1985 have predicated their opinions on the assumption that the Pennsylvania Supreme Court would, if asked, adopt the product line exception. *See e.g., Conway v. White Trucks, A Div. of White Motor. Co.*, 885 F.2d 90, 95 (3d Cir.1989) ("For purposes of our decision we will assume *arguendo* that Pennsylvania would follow the *Dawejko* decision.") (referring to *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106–07 (1981)) (adopting product line exception).[3]

1. The Court GRANTED defendants' Motion for Summary Judgment on the Duty to Warn Claim and DENIED defendants' Motion for Summary Judgment on Strict Liability. The facts and previous procedural developments were set forth in full in the Court's earlier decision and are not repeated here.

2. For purposes of this opinion the "causal requirement," as referred to in the defendants' brief, is the term that describes when a transfer of corporate assets is the "causal" reason why there is no surviving cause of action against the

original manufacturer. In other words, the transfer itself, as compared to a subsequent bankruptcy or winding down of business, must extinguish the plaintiff's right to relief against the original manufacturer. *See Conway v. White Trucks, Div. of White Motor Corp.*, 885 F.2d 90 (3d Cir.1989) (bankruptcy).

3. In *Tracey* the district court expressly acknowledged that the "causal question" was left unresolved by the Third Circuit in *Conway*. 745 F.Supp. at 1107 n. 14.

These assumptions have placed the federal courts in the uncomfortable position of predicting state law without any definitive direction from the state Supreme Court. *See Estate of Bosch*, 387 U.S. at 465, 87 S.Ct. at 1782. This discomfort is further compounded by the fact that only three states, Pennsylvania, New Jersey and California have embraced the product line exception for successor corporations. *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602 (1992). *See* Third Circuit Chief Judge Dolores Sloviter, *Diversity Jurisdiction Through the Lens of Federalism*, The American Judicature Society, Westlaw Lawprac Index, n. 39–40 (August/September 1992) ("Erie guesses" most difficult area of diversity jurisdiction after weighing federalism concerns); Craig A. Hoover, Note, *Deference to Federal Circuit Court Interpretations of Unsettled State Law:* 1982 Duke L.J. 704.

The second issue that complicates this Court's decision is that when the Third Circuit sat as the Supreme Court of the Virgin Islands, it expressly rejected the product line exception. *Polius v. Clark Equipment Co.*, 802 F.2d 75 (3d Cir.1986). In short, there is a conflict between the Third Circuit's disapproval of the product line exception and the substantive choice of law Pennsylvania has made in its own state court system. *Compare, Polius*, 802 F.2d at 82 ("sounder choice is to reject product line doctrine where court had right to choose") *with Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602, 606 (1992) (product line doctrine the law of Pennsylvania).

Accordingly, this Court must, without either Pennsylvania Supreme Court or Third Circuit precedent on point, decide whether the "causal requirement" is a prerequisite to sustaining a cause of action against a corporate successor under Pennsylvania law.

1. *Standard for a Motion to Reconsider*

Federal Rule of Civil Procedure 60(b) provides in relevant part:

**Relief From Judgment or Order**

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.**

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect,

. . .

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).[4] This rule allows the Court to reconsider its earlier Order denying Summary Judgment. *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291 (6th Cir.1989) (claim of legal error in final judgment is "mistake" within meaning of portion of rule allowing litigant to obtain relief under [rule 60(b) ] ).

2. *The Court's Original Order Denying Summary Judgment*

This Court's September 16, 1992 Order held the following: (1) that the product line exception for successor liability is the law of Pennsylvania (Opinion at 6–7, 9, *citing Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981)); (2) that the product line exception required that there exist no remaining cause of action against the original manufacturer (Opinion at 9, *citing LaFountain v. Webb Indus., Corp.*, 951 F.2d 544, 547 (3d Cir.1991)); (3) that there was no cause of action remaining against either Harry Heckman or his estate (Opinion at 10); and (4) that Pennsylvania's policy of "risk spreading" counseled in favor of *not* requiring that the transfer of corporate assets between manufacturers have been the "causal" reason why no cause of action still existed against the original manufacturer (Opinion at 10, *citing Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602, 606 (1992)).

---

**4.** Local Rule of Civil Procedure 20(g) requires that a party file a motion for reconsideration within ten (10) days. The Court finds that the defendants have complied with the local rule.

It is this Court's fourth conclusion, not requiring the "causal element," that is at the heart of the defendants' Motion to Reconsider. In reaching the decision to reject the "causal element" this Court stated:

Further, in light of the Pennsylvania Superior Court's expressed preference for spreading the risk of products liability to successor corporations, this Court rejects the defendant's arguments that plaintiff must prove that the subsequent acquisition is the direct reason for having no remedy against the manufacturer. *Compare Hill*, 603 A.2d at 606 (the exception not to be read too tightly) *with Defendants Memorandum* at 5 (succession itself must have destroyed cause of action against manufacturer).

(Opinion at 10).

This Court reached its decision because of the language in *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602, 606 (1992).

In *Hill*, the Pennsylvania Superior Court stated, with reasoning that this Court adopted in full:

The court also stated that the exception to the general rule of no liability may exist only when the following three circumstances have *each* been established:

(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacture's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business.

*Dawejko*, 434 A.2d at 109 quoting *Ray v. Alad Corp.*, [19 Cal.3d 22, 136 Cal.Rptr. 574] 560 P.2d 3 (Cal.1977). The court continued to explain that "[w]e also believe it better not to phrase the new exception too tightly. Given its philosophical origin, it should be phrased in general terms, so that in any particular case the court may consider *whether it is just to impose liability* on the successor corporation." *Id.* (emphasis added). *Hill*, 603 A.2d at 606. This Court interpreted the language "better not to phrase the new exception too tightly.... so that in any particular case the court may consider *whether it is just to impose liability* on the successor corporation" as a mandate to read liberality into the *Dawejko* test. After reviewing the available case law and the history of the product line exception in Pennsylvania, this Court concludes that the original order was correct for purposes of Fed.R.Civ.P. 60(b), and that the *Dawejko* test does not require that the plaintiff first satisfy the three threshold requirements set forth in *Ray v. Alad Corp.*, and listed immediately above the language this Court relied upon in its earlier decision.

### 3. Ascertaining Pennsylvania's Law

One other federal district court has faced the identical question presently before this Court. In *Tracey by Tracey v. Winchester Repeating Arms Co.*, 745 F.Supp. 1099, 1108 (E.D.Pa.1990), *aff'd without opinion*, 928 F.2d 397 (3d Cir.1991), the district court predicted that Pennsylvania would require a causal element for extinguishing product liability. After going through a practically identical analysis as this Court did in its September 16, 1992 Order, the *Tracey* court adopted the causal element requirement by concluding:

A more fundamental rational for adopting a causation requirement stems from the policies which underlie Section § 402A of the Restatement (Second) of Torts. Comment c to § 402A states that the justification for strict liability "has been said to be that a seller ... has undertaken and assumed a special responsibility" toward the user, that the public has the right to "rely upon the seller, that reputable sellers will stand behind their goods."

．　　　．　　　．　　．．　　　．

In *Polius, supra*, the Court noted that through Comment c the Restatement "reaffirms the notion of a causal connection."

745 F.Supp. at 1108. Without deciding whether other language in Comment *c* actually calls for the opposite result, this Court finds that recent developments in the case law, and this Court's role as a predictor of Pennsylvania state law, counsel in favor of finding that the Pennsylvania Supreme Court would reject the causal requirement.[5]

### 4. Development of the Dawejko Test

In order to fully predict how the Supreme Court would rule on the product line exception, this Court first looks to the doctrine's genesis in *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981). When the Superior Court adopted the product line exception, the Court traced the product line exception back to the California Supreme Court case of *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). It is from the *Ray* case that the three part test, cited by the defendants in this case, first emerged. The California Supreme Court stated:

> "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacture's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business."

*Ray*, 136 Cal.Rptr. at 580, 560 P.2d at 8–9. This test was repeated in full in *Dawejko*. 434 A.2d at 109.

In *Dawejko*, the Pennsylvania Superior Court did not, however, hold that Pennsylvania was adopting the *Ray* test. In fact, the Superior Court went on to review the holding of the New Jersey Supreme Court in *Ramirez v. Amsted Indus. Inc.*, 86 N.J. 332, 431 A.2d 811 (1982). In *Ramirez*, the New Jersey Supreme Court upon reviewing *Ray*, held:

> Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Ramirez*, 431 A.2d at 825 (also reprinted in *Dawejko*, 434 A.2d at 110). Significantly, the New Jersey Supreme Court did *not* adopt the requirement set forth in *Ray* that "each of the following elements" must be satisfied before the plaintiff may sustain a cause of action. The New Jersey formulation was more liberal than the California Supreme Court's tripartite test in *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977).

The difference between the *Ray* test and the *Ramirez* test is significant because of the following language, cited by the Pennsylvania Superior Court in *Dawejko* when it adopted the product line exception:

> Also, it will always be useful to consider whether the tree-part test stated in *Ray v. Alad Corp.*, *supra*, has been met. The exception will more likely realize its reason for being, however, if such details are not made part of its formulation. The formulation of the court in *Ramirez v. Amsted Industries, Inc.*, *supra*, is well-put, and we adopt it.

*Dawejko*, 434 A.2d at 111. This language makes clear that the Pennsylvania Superior Court rejected the formalistic approach chosen by the California Supreme Court. In so doing, the Pennsylvania court did *not* adopt California's requirement that the transfer of assets be the "causal element," or reason, that the first corporation is no longer in existence.

---

**5.** The last sentence of Comment *c* provides, "and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." Restatement of Torts (Second) § 402A, Comment *c*.

5. *Predicting Pennsylvania Law Based upon New Jersey's Interpretation of the Causal Element*

As the Court indicated earlier, there are only three jurisdictions that have adopted the product line exception for successor corporate liability. Further, when Pennsylvania adopted the exception it gave careful attention to, and in effect adopted, the New Jersey rule. *See Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 603 A.2d 602, 606 (1992) (reviewing Pennsylvania's adoption of the product line exception). As New Jersey foreshadowed Pennsylvania's adoption of the exception, this Court must examine any developments in New Jersey's treatment of the product line exception as a forecasting indicator of where the Pennsylvania Courts will go when they address the "causal element" requirement.

Since New Jersey adopted the product line exception in 1981, it has expressly rejected the "causal requirement." *Pacius v. Thermtroll Corp.,* 259 N.J.Super. 51, 611 A.2d 153 (1992). In *Pacius,* the Court stated:

> Therefore, dissolution of the predecessor manufacturer should be irrelevant in determining successor corporation liability. The goal of products liability, namely, to burden the successor corporation which benefits from the product line and is better equipped to spread the costs of injury throughout society, is best served by holding the current manufacturer responsible regardless of the viability of its predecessor.
>
> This court concludes that the first criterion of *Ray* is met where the predecessor company is no longer viable. It is the fact of nonviability that supports the imposition of liability. Any discussion with regard to the reasons for the demise of the predecessor is irrelevant. The first criterion of *Ray* cannot, therefore, be considered an essential element for the imposition of liability.

*Id.* 611 A.2d at 156. In reaching its decision, the *Pacius* court discussed the implication of the causal element on plaintiffs.

The court stated "both cases [*Ramirez* and its companion case *Nieves v. Bruno Sherman Corp.,* 86 N.J. 361, 431 A.2d 826 (1981)] make it clear that successor corporations are liable, where the company which manufactured the product is no longer viable, and therefore cannot afford a remedy to a plaintiff. The Court holds were public policy determinations to afford a remedy to an injured person who would otherwise be remediless." *Id.* 611 A.2d at 157.

Finally, as support for its conclusion, the *Pacius* court cited Lori J. Braender, note, *Corporate Successor Liability,* 12 Seton Hall L.Rev. 327, 344–345 (1982), for the proposition that the causal element would encourage corporate shells as a method of avoiding products liability. As Braender pointed out:

> Narrow construction of this policy justification as a condition precedent would encourage corporations to limit their liability be requiring sellers to retain their corporate existence after the acquisition. Thus, plaintiffs would be forced to look to the seller, who has minimal assets which might be insufficient to satisfy products liability claims.

12 Seton Hall L.Rev. at 344–45. The commentary's concern for limiting plaintiffs' liability seems in accord with the Pennsylvania Superior Court's decision in *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981).

This Court finds the reasoning of *Pacius* persuasive and firmly rooted in the tradition of risk spreading that originally gave rise to the product line exception. Accordingly, the *Pacius* decision serves as an accurate prediction of where the product line exception is going in New Jersey, which has again, reached a question of corporate successor liability before Pennsylvania. Because of the Court's role as a predictor of Pennsylvania law, this Court holds that Pennsylvania will most likely continue to follow New Jersey's precedent and reject the causal element requirement.[6]

**6.** To the extent that this holding conflicts with the decision in *Tracey by Tracey v. Winchester*

*Repeating Arms Co.,* 745 F.Supp. 1099, 1108 (E.D.Pa.1990), *aff'd without opinion,* 928 F.2d

6. *Motion to Certify the Issue for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b)*

█ In the alternative, the defendants ask this Court to certify the "causal element" for immediate appeal to the United States Court of Appeals for the Third Circuit. A district court may certify a question for immediate appeal to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) which provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Id.* The test for certification under 28 U.S.C. § 1292(b) is:

(1) whether the motion to be appealed involves a controlling question of law; (2) whether there is a substantial ground for the difference of opinion with respect to resolution of the issue to be appealed; and (3) whether an immediate appeal from the district court's decision could materially advance the ultimate termination of the litigation.

*Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280 (E.D.Pa.1983). This question of Pennsylvania products liability law does not meet that standard. The previous discussion makes clear that the "causal element" is a question upon which there is "substantial ground for the difference of opinion." *See* § 1292(b). However, an immediate appeal will not "materially advance the ultimate determination of the litigation." *Id.*

On appeal, the Third Circuit will have to undertake the same process of predicting Pennsylvania's choice of law as this Court has already done. Unlike a decision by the Pennsylvania Supreme Court, a decision by the Third Circuit will still be a prediction of Pennsylvania law. By not taking an expedited appeal, the Pennsylvania courts are given more time to possibility reach, and decide, the "causal element" requirement on their own. Finally, the defendants will still be able to exercise their rights after an entry of final judgment should they deem it appropriate. For these reasons, the defendants' Motion for Reconsideration, or in the alternative, for Certification of Immediate Appeal under 28 U.S.C. § 1292(b), is DENIED.

█

397 (3d Cir.1991), this Court holds that the 1992 New Jersey opinion, directly on point, is a more accurate predictor of Pennsylvania's substantive law than the commentaries to the Restatement of Torts (Second) § 402A, available to the court in 1990.

Finally, this Court points out that plaintiff originally filed this suit in the Court of Common Pleas for Philadelphia County and that it was the defendants who removed this case to federal court. Had this case stayed in state court, the Pennsylvania Supreme Court might have had the opportunity to reach the "causal element" question. Because Olejar is now unable to appeal the trial court's decision to the Pennsylvania Supreme Court, and ever mindful of *Erie's* proscription on forum shopping, it would be inequitable to deny plaintiff his day in court because the case has been removed from the state court system that will ultimately have to resolve the "causal element" question.