**Julius DALE, Jr., Plaintiff,**

v.

**WEBB CORPORATION, Reed Equipment Division, Defendant.**

**No. CIV.A. 02–1109.**

United States District Court, E.D. Pennsylvania.

March 24, 2003.

Richard M. Jurewicz, Galfand Berger, LLP, Philadelphia, PA, for Julius Dale, Jr., Plaintiff.

Thomas E. Tyler, Davis, Riter, Parry & Hartmann, Philadelphia, PA, for Webb Corporation, Reed Equipment Division, Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Julius Dale, Jr. brought this action against defendant Webb Corporation seeking damages for injuries he sustained while operating a plate bending roll machine that was designed, manufactured and sold by Reed Engineering Company. The plaintiff alleges that Webb Corporation, as a successor in interest to Reed Engineering Company and under the Pennsylvania product line exception to the general rule of successor non-liability, is liable for his injuries. Presently before the court are cross-motions for summary judgment on this issue. For the reasons that follow, the defendant's summary judgment motion will be granted, plaintiff's motion for partial summary judgment will be denied and judgment will be entered in favor of the defendant.

## I. BACKGROUND

The material facts of this case are uncontested. On September 1, 2000, plaintiff Julius Dale, Jr. ("Dale" or "plaintiff") was injured while operating a plate bending roll machine ("bending machine")[1] that was designed by Reed Engineering Company ("Reed"), and ultimately, manufactured and sold by Reed in the Spring of 1952.[2] At the time of the sale of the bending machine, Reed was owned by Lloyd Knost ("Knost") as a sole proprietorship.[3] In 1954 Knost entered into a five-year licensing agreement (the "1954 contract") with Webb Corporation ("Webb"), under which Knost granted Webb the exclusive right to manufacture, use and sell products formerly made by Reed, including Reed's bending machine product line. In 1959, Knost and Webb entered into a second contract (the "1959 contract"), under which Knost sold to Webb the product line which it had licensed to Webb under 1954 Contract. The bending machine that caused Dale's injury falls within the bending machine product line that Webb acquired from Reed.[4] At the time of the injury, Knost was no longer alive.

Dale filed a complaint against Webb, in its capacity as successor in interest to Reed, in the Court of Common Pleas of Philadelphia County seeking damages for his injuries under theories of negligence, strict liability and breach of warranties. Webb removed the case to this court where, by stipulation of the parties, plaintiff's breach of warranty claim and claim of negligence on the part of Webb were voluntarily withdrawn. Presently before the court are cross motions for summary judgment on the issue of Webb's liability as Reed's successor.

## II. ANALYSIS

### A. Summary Judgement Standard

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The role of the trial court is to determine whether there are material factual issues that merit a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making that deter-

1. A plate bending roll machine, also referred to as a "slip roll" plate bending machine by the defendant and a roll bending machine by the Third Circuit in LaFountain v. Webb Indus. Corp., 951 F.2d 544 (3d Cir.1991), rolls flat plates of metal into cylinders or cones, for machine manufacturing purposes.

2. Specifically, plaintiff suffered amputations of the "ring" and "pinky" fingers of his left hand.

3. Reed had previously been organized as a partnership, owned and operated by Knost and Ted Reed. In 1950, Knost purchased Ted Reed's interest in the company and operated it as a sole proprietorship until, approximately, August of 1952, when Knost had Reed incorporated in the State of Missouri. The

exact date of incorporation is unknown, but both parties agree that Reed was not incorporated until after the bending machine that caused plaintiff's injuries was designed, manufactured and sold.

4. Plaintiff and defendant heavily contest the degree to which Webb advertised the relevant product line as "Reed" products, or as a "continuation of the Reed product line," as well as the degree to which Webb employed Reed's good will in marketing and selling its bending machine product line. The parties also contest whether the 1954 contract and the parties' actions during the term of that contract are relevant to resolving these issues. For the reasons discussed herein, these issues are irrelevant to the court's resolution of this matter.

mination, the court must give the nonmoving party the benefit of all reasonable inferences that might be drawn from the underlying facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Sempier v. Johnson and Higgins*, 45 F.3d 724, 727 (3d Cir.1995) (en banc). Summary judgment is appropriate if the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Corporate Successor Liability and the Product Line Exception under Pennsylvania Law*

#### 1. *Successor liability in general*

■ Generally, in Pennsylvania, "when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor." *LaFountain v. Webb Indus. Corp.*, 951 F.2d 544, 546–47 (3d Cir.1991). There are, however, several traditional exceptions to this general rule. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir.1985); *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602, 605 (1992). These exceptions apply where: "(1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor; (2) the transaction amounts to a consolidation or *de facto* merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; [ ] (4) the transaction is fraudulently entered into to escape liability;" or (5) the transfer was made without

adequate consideration and no provisions were made for creditors of the selling corporation. *Hercules*, 762 F.2d at 308–09; *Hill* 603 A.2d at 605. None of these exceptions is applicable under the facts of this case. *See LaFountain*, 951 F.2d at 547.

#### 2. *The product line exception*

■ Some courts, including the Superior Court of Pennsylvania, "have expanded on the traditional corporate law exceptions to [the] non-liability rule" by recognizing what is referred to as the "product line" exception. *Id.; see Kradel v. Fox River Tractor Co.*, 308 F.3d 328, 331–32 (3d Cir. 2002); *Hill*, 603 A.2d at 606–08; *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106, 110 (1981). Under Pennsylvania law:[5]

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Dawejko*, 434 A.2d at 110, *cited in, Kradel*, 308 F.3d at 331.

■ In *Hill v. Trailmobile, Inc.*, 412 Pa.Super. 320, 603 A.2d 602 (1992), the Superior Court of Pennsylvania substantially limited the availability of the product line exception by requiring that the following three factors, commonly referred to as the *Ray* factors,[6] be established before the

---

**5.** The parties agree that the issue of successor liability is governed by Pennsylvania law in this case.

**6.** In *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), the Su-

preme Court of California adopted the product line exception to the general rule of successor non-liability, and held that liability should be imposed upon a successor of a manufacturer only when the above listed requirements are satisfied. *Id.* at 8–9.

exception may be applied: [7]

1) The virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business;

2) The successor's ability to assume the original manufacturer's risk-spreading rule; and

3) The fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business.

*Kradel,* 308 F.3d at 331–32 (citing *Hill,* 603 A.2d at 606). It is only after all three *Ray* factors have been established that a court may consider whether the product line exception is applicable under the facts of a given case. *Kradel,* 308 F.3d at 332.

Under the facts of this case, the court finds, as a matter of law, that the first *Ray* factor can not be established, and that therefore, Webb cannot be held liable to Dale for his injuries.

### 3. *The first Ray factor*

#### a. *The destruction of plaintiff's remedies against the original manufacturer*

In *LaFountain,* the Third Circuit made clear that, under Pennsylvania law, there can be no successor liability in a products liability case " 'where the claimant [has] a potential remedy against the original manufacturer, but [fails] to exercise all available means to assert his or her claim .... [A]s a logical matter, the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception.' " *LaFountain,* 951 F.2d at 547 (quoting *Conway v. White Trucks, Div. of White Motor Corp.,* 885 F.2d 90, 95 (3d Cir.1989)) (alteration in original). Like the present case, *LaFountain* involved a products liability claim against defendant Webb arising out of an injury sustained by the claimant while using a bending machine manufactured by Reed. *Id.* at 545–46. The Third Circuit held that, at the time of the accident, the claimant enjoyed a remedy against Knost (in his capacity as the sole proprietor of Reed), and that therefore, the product line exception could not be invoked to establish successor liability on the part of Webb. *Id.* at 548.

**7.** In *Dawejko,* the Superior Court of Pennsylvania instructed that, under Pennsylvania law, the *Ray* factors served only as factors to be weighed and considered in applying the product line exception analysis as adopted therein. *Dawejko,* 434 A.2d at 111. The court characterized the *Ray* factors as advisory and expressly excluded them from its formulation of the product line exception. *Id.* Over ten years later, in *Hill,* the Pennsylvania Superior Court revisited this issue and stated that "the product-line exception to the general rule of no liability for successor corporations may *only* be applied when the [*Ray* factors] have *each* been established." *Hill,* 603 A.2d at 606 (emphasis in original). During the period between *Hill* and the recent Third Circuit decision in *Kradel,* courts within

this district reached varying results in attempting to reconcile the apparent inconsistencies between *Dawejko* and *Hill.* In *Kradel,* the court resolved this issue by explicitly stating that *Hill* has "recast the three factors in *Ray* as requirements." *Kradel,* 308 F.3d at 332 ("[w]hile *Hill* arguably read more into *Dawejko* than is there, it nevertheless elevated the *Ray* factors into prerequisites for the product line exception").

It should be noted, however, that *Hill* did not overrule *Dawejko.* Rather, *Hill* converted the existence of the *Ray* factors from mere factors to be considered in the analysis of the product line exception, as adopted in *Dawejko,* to a threshold finding that must be made before the *Dawejko* analysis may proceed. *See Kradel,* 308 F.3d at 332.

There exists only one material difference between *LaFountain* and the case at bar, i.e., at the time of Dale's injury, Knost was no longer alive. Therefore, as conceded by Webb and unlike the plaintiff in *LaFountain,* the plaintiff in this case did not have a potential remedy against the original manufacturer of the bending machine, i.e., Knost, at the time of his injury.[8] Plaintiff argues that his lack of remedy against Knost satisfies the first *Ray* factor.

Webb, on the other hand, points to language in *LaFountain,* which states that "the rationale of the product line exception is that 'the virtual destruction of the plaintiff's remedies against the original manufacturer [was] caused by the successor's acquisition,'" *Id.* at 357 (quoting *Conway,* 885 F.2d at 97) (alteration in original). Under this language, according to Webb, the first *Ray* factor cannot be established unless the transaction itself,i.e., Webb's acquisition of Reed's business, caused the destruction of plaintiff's remedy against Reed and Knost. In other words, defendant argues that causation, i.e., that the asset transfer brought about the destruction of the injured party's remedies, is a necessary element of the first *Ray* factor. Thus, the court must determine whether the first *Ray* factor requires that Webb's acquisition of Reed's bending machine business have caused the destruction of Dale's remedy against Reed/Knost, or whether the absence of a remedy against the original manufacturer is, by itself, sufficient to satisfy the first *Ray* factor.

### b. *The causation requirement*

Since *Conway,* in which the Third Circuit predicted that the Pennsylvania Supreme Court would require the lack of a remedy against the original manufacturer as a prerequisite to the applicability of the product line exception, *see Conway,* 885 F.2d at 95, "[t]here [has been] a split in authority among judges of this [c]ourt as to whether the successor's acquisition of the predecessor must have caused the destruction of [plaintiff's] remedy against the original manufacturer for the product line exception to apply under Pennsylvania law." *Gower v. Savage Arms, Inc.,* 166 F.Supp.2d 240, 247 (E.D.Pa.2001). As noted by plaintiff, at least three courts within this district have held that the causation requirement is not an essential element of the product line exception. *See Lacy v. Carrier Corp.,* 939 F.Supp. 375, 384–85 (E.D.Pa.1996) (Padova, J.); *Olejar v. Powermatic Div. of DeVlieg–Bullard, Inc.,* 808 F.Supp. 439, 443 (E.D.Pa.1992) (Hutton, J.); *see also Morgan v. Havir Mfg. Co.,* 887 F.Supp. 759, 762 (E.D.Pa.1994) (Hutton, J.) (stating that the *Ray* factors are not "firm requirements that must be satisfied by the party moving for the application of the product line exception," and citing *Olejar,* 808 F.Supp. at 443). However, these cases were premised on the then prevalent interpretation of Pennsylvania law, under which the *Ray* factors were not considered a prerequisite to the applicability of the product line exception, but rather, were mere factors to be considered by the court when determining whether to apply the product line exception.[9] *See*

---

**8.** Neither party addresses the question of whether Dale had a remedy against Knost's estate at the time of his injury. Under the facts of this case, however, whether or not Dale had a remedy against Knost's estate does not change the court's resolution of the question of Webb's liability to Dale.

**9.** In *Olejar,* the court traced the origin of the product line exception in Pennsylvania to *Dawejko. Olejar,* 808 F.Supp. at 443. The court noted that in *Dawejko,* the Pennsylvania Superior Court chose not to adopt California's test for applicability of the product line exception, as set forth in *Ray,* but instead, chose to adopt the more liberal approach followed by the

*Lacy,* 939 F.Supp. at 384–85; *Morgan,* 887 F.Supp. at 762; *Olejar,* 808 F.Supp. at 443. Since then, the Third Circuit held in *Kradel* that, under Pennsylvania law, the presence of all three *Ray* factors is a prerequisite to the applicability of the product line exception, and thus, expressly negated the premise upon which the reasoning of the three district court cases is based. *Kradel,* 308 F.3d at 332. Therefore, plaintiff's reliance on *Olejar, Morgan* and *Lacy* is misplaced.

Similarly, the defendant relies heavily on two district court cases holding that in order for a successor corporation to be held liable under the product line exception, "the successor's acquisition [of the predecessor's product line] must have caused [the plaintiff's] lack of remedy against the predecessor." *Madison v. Triumph Mfg. Co.,* 1992 WL 3203, *3 (E.D.Pa. Jan.6, 1992) (DuBois, J.), *aff'd,* 977 F.2d 568 (3d Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993); *see Tracey v. Winchester Repeating Arms Co.,* 745 F.Supp. 1099, 1108 (E.D.Pa.1990) (O'Neill, J.), *aff'd,* 928 F.2d 397 (3d Cir.1991). These cases, while instructive, are not really on point since they were also decided before *Kradel.* Nor has any Pennsylvania state authority addressed this precise issue. Therefore, the court must decide, in light of *Kradel,* whether the Supreme Court of Pennsylvania would find the causation requirement to be an essential element of Pennsylvania's product line exception. For the reasons that follow, the court predicts that the Supreme Court of Pennsylvania would so find.

First, the plain language of the first *Ray* factor, as enunciated by the Supreme Court of California in *Ray,* and as adopted by the Superior Court of Pennsylvania in *Dawejko* and *Hill* and by the Third Circuit Court of Appeals in *Kradel, LaFountain,* Conway and *Polius,* warrants the adoption of the causation requirement. As stated by these courts, the first *Ray* factor requires "the virtual destruction of plaintiff's remedies against the original manufacturer *caused by the successor's acquisition*" of the predecessor's business. *Kradel,* 308 F.3d at 331 (emphasis added); *LaFountain,* 951 F.2d at 547; *Conway* 885 F.2d at 97; *Polius,* 802 F.2d 75, 78 (3d Cir.1986); *Ray,* 136 Cal.Rptr. 574, 560 P.2d at 8–9; *Hill,* 603 A.2d at 606; *Dawejko,* 434 A.2d at 109. Even the *Lacy* court, which declined to impose the causation requirement under the then prevalent interpretation of Pennsylvania law, acknowledged that the language of *Ray* requires that the acquisition of the original manufacturer's business by the successor corporation have caused the destruction of plaintiff's remedies. *Lacy* 939 F.Supp. at 384 ("California's three-part test, as enunciated in *Ray* [ ], requir[es] that the acquisition cause the destruction of the plaintiff's remedies").

Second, as previously stated, the Third Circuit recently held that in *Hill* the

New Jersey Supreme Court in *Ramirez. Id; see Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811, 825 (1981). Thus, in order to answer the causation question, the court looked to New Jersey law on the issue, and predicted that Pennsylvania would, once again, adopt the approach taken by New Jersey in *Pacius v. Thermtroll Corp.,* 259 N.J.Super. 51, 611 A.2d 153 (1992). *See Olejar,* 808 F.Supp. at 444. In *Pacius,* the New Jersey Superior Court held that the New Jersey Supreme Court "did not incorporate [the *Ray* factors] into its holdings, nor indicate that they were necessary elements for the imposition of liability." *Pacius,* 611 A.2d at 156. Accordingly, *Olejar* adopted the *Pacius* court's conclusion that the actual cause of the claimants loss of remedy against the original manufacturer is irrelevant to the product line exception analysis. *Olejar,* 808 F.Supp. at 444. In *Lacy* and *Morgan,* the court simply adopted the reasoning of *Olejar. See Lacy,* 939 F.Supp. at 384–85; *Morgan,* 887 F.Supp. at 762.

Pennsylvania Superior Court adopted California's product line exception test, as enunciated in *Ray*, as a prerequisite to the applicability of Pennsylvania's version of the exception. *Kradel*, 308 F.3d at 332. Thus, to the extent that California law set the contours for the adoption of the product line exception, the court finds logical that California law, which requires causation, would also be applied in this context. *See Stewart v. Telex Communications, Inc.*, 1 Cal.App.4th 190, 1 Cal.Rptr.2d 669, 675 (3d Dist.1992); *Lundell v. Sidney Mach. Tool Co.*, 190 Cal.App.3d 1546, 236 Cal.Rptr. 70, 75 (1987).

Finally, certain practical considerations, including business stability, support a finding that the causation requirement is an essential element of Pennsylvania's product line exception. For example, in *Tracey*, the predecessor corporation had gone into receivership prior to transferring its asset to the successor corporation. *Tracey*, 745 F.Supp. at 1108. The court noted that, under these circumstances, "[i]f the product line exception were applied [without a causation requirement], prospective purchasers might be deterred from bidding on the [bankrupt entity's] assets or might demand a downward adjustment in the sale price paid for the assets of the estate." *Id.* The court further noted that "[w]hile such a reduction in price or refusal to purchase would not be a problem in a case of an asset purchase involving two solvent corporations, it might be a problem in the bankruptcy context because any diminution in the value of the salable assets would be borne by the bankrupt corporation's creditors." *Id.* at 1108–07.

For these reasons, the court predicts that the Supreme Court of Pennsylvania would adopt the causation requirement as an essential element of the first *Ray* factor, and in turn, an essential element of the product line exception.

c. *Application of the causation requirement to the facts of the present case*

■ Next, the court must determine whether the causation requirement has been met in this case. Plaintiff contends that Webb did, in fact, cause the destruction of plaintiff's remedy against Reed. In support of this argument, plaintiff alleges that under the terms of the 1954 contract, Reed was obligated to cease its manufacturing and production of bending machines, which ultimately contributed to the dissolution of the company. Defendant, on the other hand, essentially argues that this precise issue has already been addressed and decided by the Third Circuit in *LaFountain*, and thus, the court is bound, as a matter of issue preclusion, by that outcome.

As previously stated, *LaFountain* involved the issue of Webb's successor liability under the product line exception with regards to an injury sustained while the plaintiff was operating a bending machine that was designed and manufactured by Reed prior to Webb's acquisition of Reed's bending machine product line. *LaFountain*, 951 F.2d at 545–46. The court found that the plaintiff enjoyed a potential remedy against Knost, who was very much alive then, in his capacity as the former sole proprietor of Reed, and that therefore, there could be no successor liability on the part of Webb. *Id.* at 548. The only difference between this case and *LaFountain*, as previously noted, is the fact that Knost was not alive at the time of the injury in this case. Accordingly, the defendant contends that while Dale's potential remedies against Knost have been destroyed, their destruction was caused not by the asset transfer, but by Knost's death. The court agrees.

In *LaFountain*, the Third Circuit stated that when the predecessor entity is a sole proprietorship, as opposed to a corporation, the analysis of successor liability may be altered, *see LaFountain*, 951 F.2d at 547–48 & n. 3, and cautioned that, in such a case, the product line exception might not be applicable.[10] *Id.* at 548. The court noted that a successor corporation may sometimes be held liable for the liabilities of a predecessor corporation "because a corporation is an entity created by statute that can be dissolved at any time, thus leaving ... those injured by the products of the predecessor[ ] without a cause of action." *Id.* at 547. The court then contrasted the nature of a corporation with that of a sole proprietor, which, unlike a corporation, "remains liable for his debts and liabilities." *Id.* at 548. These teachings are equally applicable here.

Under *LaFountain*, where the original manufacturer is a corporation that dissolves at some point after the successor acquires its assets, a factual issue exists as to whether the acquisition, or some other event or circumstance, caused the predecessor to dissolve, and in turn, destroyed the plaintiff's remedies against the predecessor. In the face of a genuine issue of material fact, the issue would generally fall within the province of the fact finder. *See, Gower*, 166 F.Supp.2d at 247. On the other hand, as noted in *LaFountain*, where the original manufacturer is a sole proprietorship, the sole proprietor's liability for defective products is unaltered when he transfers his company's assets. Accordingly, as long as the sole proprietor is alive, the remedy against him exists. In the present case, the plaintiff does not appear to contest the fact that had Knost been alive at the time of Dale's injury,

Dale's remedy would be against Knost. Nor does the plaintiff contest the fact that even if Knost had never transferred Reed's assets to Webb, given that Knost was dead at the time of the injury, plaintiff would, nevertheless, have lacked a remedy against him. Thus, the court finds that it was Knost's death, and not Webb's acquisition of Reed's bending machine business, which caused the destruction of Dale's remedy against the original manufacturer of the bending machine. Accordingly, the court concludes, as a matter of law, that plaintiff has failed to establish the existence of the first *Ray* factor, and that, therefore, Webb cannot be held liable for the plaintiff's injury.

## III. *CONCLUSION*

For the foregoing reasons, the court concludes that, as a matter of law, defendant cannot be held liable for plaintiff's injuries on a theory of successor liability. Accordingly, defendant's motion for summary judgment will be granted, plaintiffs motion for partial summary judgment on the issue of liability will be denied and judgment will be entered in favor of the defendant.

---

**10.** The court declined to decide this issue because it found that, even if the product line exception could be applied where the predecessor is a sole proprietorship, the elements of the exception had not been established. *LaFountain*, 951 F.2d at 548.