James B. COLMAN, John T. Colman, and Janice M. Colman, Plaintiffs,

v.

FISHER–PRICE, INC., a Delaware corporation, formerly a division of the Quaker Oats Company, now a division of Mattel, Inc., and Fictitious Defendants I through X, Defendants.

Civil Action No. 96–950 (JBS).

United States District Court, D. New Jersey.

Oct. 16, 1996.

Frank D. Allen, Archer & Greiner, Haddonfield, NJ and Joseph W. Clarke, Jr., Clarke Law Offices, Haddonfield, NJ, for Plaintiffs.

John E. Tyrell, James W. Johnson, Clark, Ladner, Fortenbaugh & Young, Cherry Hill, NJ, for Defendants.

## OPINION

SIMANDLE, District Judge:

This is a products liability case in which plaintiff James Colman alleges that he was seriously injured while playing with a Fisher–Price toy on June 12, 1977. Presently before the Court are a variety of motions brought by the parties in this case. The most significant of those motions are the motions by plaintiffs and defendant Fisher–Price, Inc., ("Fisher") seeking summary judgment on the issue of corporate successor liability. Specifically, the parties seek a Court ruling regarding whether Fisher may be held responsible for certain allegedly tortious conduct of the Quaker Oats Company ("Quaker") on the grounds that Fisher is Quaker's corporate successor. As explained more fully herein, partial summary judgment is granted to plaintiffs on the successor liability issue.

### Background

On June 12, 1977, when plaintiff James Colman was sixteen months old, he was allegedly injured while playing with a toy known as the "Fisher–Price Snap Lock Beads." (Second Amend. Compl. at 6). Colman alleges that a piece of the toy lodged in his throat, causing oxygen deprivation. (*Id.*). He is now permanently disabled. (*Id.*).

From 1969 through 1991, the "Fisher–Price Snap Lock Beads" toy was marketed and sold by Quaker through its Fisher–Price division. (Df. Sum. Judg. Br., Ex. 2, affidavit of Paul Charland). Until 1990, the Fisher–Price division was an unincorporated entity that had no legal existence apart from Quaker. (*Id.*). In 1990, Fisher became an incorporated business, barren of assets, that was wholly owned by Quaker. (*Id.*).

On June 28, 1991, Fisher and Quaker entered into a "Transfer and Assumption Agreement." (Pl.Ex. A). In that agreement Quaker transferred to Fisher all of Quaker's rights, interests, and assets in its toy division. (*Id.*). The agreement further provided that Fisher would assume all of Quaker's liabilities stemming from its toy business. (*Id.*).

After James Colman reached the age of majority, plaintiffs instituted suit both in this Court and in New Jersey Superior Court seeking recovery for Colman's injuries allegedly caused by the Snap Lock Beads. The state court action was filed on January 22, 1996, and the federal court action was filed on January 24, 1996. (Pl.Ex. J; Pl.Ex. L). On February 28, 1996, defendants removed the state court case to this Court, where it was consolidated with plaintiffs' federal court action. (April 1, 1996, Consent Order). The present action, having been removed from state court, was designated the consolidated lead case. (*Id.*)

In both the state and federal court proceedings, plaintiffs' original complaints

named as a defendant, "Fisher–Price, Inc., a Delaware corporation and a division of the Quaker Oats Company." (Pl.Ex. J; Pl.Ex. L). Plaintiffs subsequently learned that Mattel, Inc. had recently purchased Fisher and so, on January 29, 1996, plaintiffs' complaints were amended to name as a defendant, "Fisher–Price, Inc., a Delaware corporation formerly a division of the Quaker Oats company, now a division of Mattel, Inc." (Pl. Ex. K; Pl.Ex. M). Plaintiffs diligently embarked upon discovery to resolve the successorship issue.

The series of motions currently before the Court began with a motion to dismiss made by Quaker. Quaker argues that it has not been properly named as a defendant in this case and that it was not served with process within the 120–day period set forth in Fed. R.Civ.P. 4(m). Plaintiffs contest those allegations, and argue further that if the Court finds that service of process on Quaker was not made within the 120–day period, then that period should be extended in this case. Similarly, plaintiffs assert that if the Court finds that Quaker has not been properly named as a defendant, plaintiffs should be permitted to amend their complaints to make clear that plaintiffs are indeed seeking damages from Quaker. Because the applicable statute of limitations has expired, plaintiffs argue that the proposed amendment of the complaints would "relate back" to the dates of the original complaints. *See* Fed.R.Civ.P. 15(c).

In addition to responding to Quaker's motion to dismiss, plaintiffs cross-moved for partial summary judgment on the issue of corporate successor liability. Specifically, plaintiffs seek a Court declaration that Fisher is the legal successor to Quaker's toy division. Plaintiffs argue that if the Court so finds, plaintiffs could proceed exclusively against Fisher and would not need to involve Quaker in this case at all.

Fisher then cross-moved for summary judgment. Fisher argues that if the Court concludes that Fisher is not the legal successor to Quaker, then Fisher should be awarded judgment as a matter of law. Fisher correctly notes that successor liability is the only basis on which Fisher could be found liable in this case because at the time of Colman's injury Fisher was a mere unincorporated division of Quaker.

Most recently, plaintiffs' newly retained counsel submitted a letter to the Court questioning the Court's diversity jurisdiction over this case. (Fisher is a Delaware corporation. Quaker is a New Jersey corporation. Plaintiffs are New Jersey residents.) The letter also requests that in the event the Court dismisses all of plaintiffs' claims against Quaker and Fisher, plaintiffs be permitted to amend their complaints to include a malpractice action against plaintiffs' former attorney. Plaintiffs make that request in view of New Jersey's "entire controversy doctrine." *See, e.g., Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 662 A.2d 509 (1995).

### *Discussion*

I. *The Parties' Cross–Motions for Summary Judgment on the Corporate Successor Liability Issue*

A. *Summary Judgment Standard*

Since the determination of this Court's diversity jurisdiction depends upon ascertaining the identity of the proper defendant, we will first consider the parties' cross-motions on the issue of corporate successor liability.

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir. 1996); *Kowalski v. L & F Prods.,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that: "[w]hen the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial." *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1987)). However, "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." *Brewer,* 72 F.3d at 330 (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

### B. Corporate Successor Liability

■ Traditionally, New Jersey corporate law provided that "where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct." *Ramirez v. Amsted Indus.; Inc.,* 86 N.J. 332, 340, 431 A.2d 811 (1981). There were four exceptions to this general rule. Those exceptions called for transferee liability "where (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape

responsibility for such debts and liabilities." *Id.* at 340–41, 431 A.2d 811.

■ In *Ramirez,* the New Jersey Supreme Court analyzed the traditional successor liability approach and criticized it as "unresponsive to the legitimate interests of the products liability plaintiff." *Id.* at 341, 431 A.2d 811. The court therefore "adopt[ed] substantially" the "product line" analysis that had been developing in California case law. *Id.* at 348, 431 A.2d 811. Under the product line approach, "a party which acquires a manufacturing business and continues the output of its line of products ... assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 582, 560 P.2d 3, 11 (1977).

A threshold issue to be resolved in this case is whether the product-line exception found in *Ramirez* was meant to coexist with or supplant the four traditional exceptions to the rule of no liability for corporate successors. A close reading of *Ramirez,* and an understanding of the fact that the *Ramirez* court aimed to expand and not restrict the remedies available to products liability plaintiffs, indicate that the New Jersey Supreme Court would hold that the traditional exceptions remain good law. To an extent, the second and third traditional exceptions were subsumed by the broader product-line approach and thus have become less significant. However, there is no indication that the New Jersey Supreme Court would hold that express agreement, the first and most basic of the traditional exceptions, is no longer grounds for corporate successor liability. *See Leo v. Kerr–McGee Chemical Corp.,* 37 F.3d 96, 99 n. 3 (3d Cir.1994) (dicta); *Pacius v. Thermtroll Corp.,* 259 N.J.Super. 51, 53–54, 611 A.2d 153 (Law Div.1992) (recognizing that traditional exceptions may still be basis for corporate successor liability).

■ Returning to the facts of the case presently before the Court, the Court finds that the express-agreement exception applies in this case and permits plaintiffs to seek damages from Fisher. Section 2 of the Transfer and Assumption Agreement

("Agreement") between Fisher and Quaker contains a broad assumption-of-liabilities clause, which provides in relevant part:

> Fisher–Price agrees to assume ... and pay, comply with and discharge all contractual and other obligations and liabilities ... associated with [Quaker's toy business] ... whether accrued, absolute, contingent or otherwise, and whether due or to become due ..., whether existing on the date hereof or arising at any time or from time to time after the date hereof. ...

(Pl.Ex. A). Defendants respond by pointing to Section 20(b) of the Agreement, which states, "Nothing in this Agreement shall give any person not a party hereto any rights that it would not otherwise have." Defendants argue that Section 20(b) makes clear that Section 2 merely allocates liability between Quaker and Fisher, and does not enable plaintiffs to sue Fisher directly.

The Court does not share defendants' interpretation of the Agreement. Significantly, Section 5 of the Agreement provides that Fisher has a duty to indemnify Quaker for any future toy-related losses sustained by Quaker. Thus, Section 5 performs the purpose that defendants attempt to attribute to Section 2. In the Court's view, Section 2 should not be read as a superfluous restatement of the Agreement's indemnification provisions, but rather as providing that Fisher assumes direct responsibility and liability for claims relating to Quaker's toy business. The Court finds that Section 20(b) was not meant to compel plaintiffs to sue Quaker and then wait for Quaker to implead Fisher. The plain language of Section 2 contemplates a more direct obligation on the part of Fisher, and, indeed, provides that Fisher is the assignee of Quaker's toy-related liability. There can be no more explicit statement of Fisher's status as successor to Quaker's toy-related liabilities arising from the Fisher–Price line.

In support of the Court's conclusion, the Court notes that this is not a case in which one corporate entity caused injury and passed on its liability to a second, unrelated and innocent corporate entity. It was a Fisher product carrying the Fisher brand name that caused the alleged injuries in this case. Thus, Fisher not only is Quaker's successor, it also is the *de facto* manufacturer of the product in question.

Moreover, this is not a case in which two defendants are at odds concerning their respective responsibility for an allegedly tortious act of the predecessor. The same attorney is presently representing Quaker and Fisher, and, at oral argument, defense counsel conceded that there will not be any legal action between Quaker and Fisher to apportion between those two parties any damages assessed by the trier of fact in this case. Because Quaker and Fisher view the apportionment of liability between them as inconsequential, they cannot allege that they will be prejudiced by allowing plaintiffs to proceed directly against Fisher.

In fact, it is apparent to the Court that defendants have argued against successor liability solely to attempt to seize upon plaintiffs' allegedly deficient pleadings and service of process. Defense counsel contends that Quaker is the only party that plaintiffs may sue for their injuries, and, further, that Quaker has not been properly named as a defendant and served with process in this case. In this way, defendants aim to convince the Court to dismiss all of plaintiffs' claims. However, in this case in which Fisher produced the allegedly defective toy in question, packaged that toy with Fisher's name stamped on the box, and subsequently assumed all of Quaker's liabilities stemming from its toy business, this Court will not dismiss plaintiff's case on the basis of the technicality urged by defendants.

Lastly, defendants contend that Section 2 of the Agreement may not be enforced as written because the "express agreement" exception and the other exceptions to the traditional rule of non-liability for corporate successors do not apply where the "predecessor" corporation remains an extant legal entity. In support of that argument, defendants point to cases stating that the *Ramirez* product-line exception does not apply in such a situation. However, this case involves an express assumption-of-liability agreement. Although no New Jersey case holds that the express agreement exception continues to apply where the corporation committing the

tort remains in business, neither are there any cases standing for the contrary proposition. Indeed, the contention that New Jersey products liability law precludes the contractual assignment of liability in such an instance strikes the Court as absurd. To determine, as this Court does, that Fisher–Price, Inc., is the successor in liability to the Quaker Oats Company with respect to the Fisher–Price product line of toys, is to state the obvious terms of the assumption agreement between these entities, and Fisher shall be estopped from claiming otherwise. It would be both unfair and impractical to find that suit may not be brought against Fisher merely because Quaker transferred only its toy division to Fisher, and thereby remained an ongoing corporate enterprise, in the face of this explicit assumption of liabilities by Fisher.

No material facts are in dispute on this point, and plaintiffs are entitled to prevail on this issue as a matter of law. Plaintiffs' motion for partial summary judgment on the issue of corporate successor liability is granted, and Fisher's motion on that issue is denied.

## II. *Quaker's Motion to Dismiss*

■ Plaintiffs inform the Court that if the Court grants partial summary judgment to plaintiffs on the issue of corporate successor liability, plaintiffs need not and will not seek to bring any claims against Quaker in this case. (Pl. Br. at 54). Plaintiffs note that Quaker is a New Jersey corporation and plaintiffs are New Jersey residents, and thus keeping Quaker out of this case removes a threat to the Court's diversity jurisdiction over the parties' dispute. (*Id.*).

Because of the Court's grant of plaintiffs' summary judgment motion, and plaintiffs' resulting willingness to forego proceeding against Quaker, it is not necessary to reach Quaker's motions concerning whether plaintiffs' complaints properly named Quaker as a defendant in this case and whether Quaker was served with process in a timely manner. Plaintiffs' cross-motions to extend the time period for service of process and to amend the pleadings to name Quaker as a defendant also have become moot.

Plaintiffs are hereby instructed to submit to this Court an amended complaint within fourteen days of the date of this Opinion. In that amended complaint, plaintiffs shall correct the current complaints' ambiguous language that refers to the defendant(s) as "Fisher–Price, Inc., a Delaware corporation formerly a division of the Quaker Oats Company, now a division of Mattel, Inc." Specifically, the amended complaint shall make clear that Quaker and Mattel, Inc. are not parties to this case, and that the proper defendant is Fisher–Price, Inc. Because Fisher had knowledge of this claim within the limitations period of 120 days following the filing of the complaint, this amendment relates back to the date of filing the complaint under Rule 15(c), Fed.R.Civ.P., and the naming of Fisher–Price, Inc., is timely. Finally, plaintiffs have demonstrated that this Court has subject-matter jurisdiction arising in diversity of citizenship, 28 U.S.C. § 1332.

## III. *Plaintiffs' Motion to Name Plaintiffs' Former Counsel as a Defendant in this Case*

In view of New Jersey's entire controversy doctrine, plaintiffs have requested that they be permitted to amend their complaints to name their former attorney as a defendant in this case. Plaintiffs state that if the Court grants defendants' motions and dismisses all of plaintiffs' claims against Fisher and Quaker, plaintiffs will seek to recover malpractice damages from their former attorney. However, as noted above, plaintiffs' claims against Fisher remain intact. Thus, at this point, plaintiffs have not suffered any legally cognizable injury as a result of the actions of plaintiffs' former counsel, and any malpractice claims by plaintiffs are premature at this time. The Court will therefore exercise its discretion to deny plaintiffs' motion. That denial is issued without prejudice to plaintiffs' ability to bring the motion again in an appropriate forum if it appears that any cause of action has accrued in favor of plaintiffs and against their former attorney.

## Conclusion

Partial summary judgment is granted to plaintiffs on the issue of corporate successor

liability. Specifically, the Court holds that Fisher is the legal successor to Quaker's toy division and may be sued directly for the injuries allegedly sustained by plaintiffs in this case. Because of that holding and plaintiffs' resulting willingness to forego proceeding against Quaker, Quaker's motion to dismiss plaintiffs' claims against Quaker is dismissed as moot. Similarly, plaintiffs' motions to extend the time for service of process on Quaker and to amend their complaints to name Quaker as a defendant in this case are dismissed as moot. Lastly, plaintiffs' motion to include plaintiffs' former attorney as a defendant in this case is dismissed as premature.